## MURPHY et al. *v.* THE STATE, 24 Miss. Rep., 590.

### TRADING WITH SLAVES.

So much of the 2d section of the act of March 6th, 1850, " to suppress trade and barter with slaves," as declares that " the name of the slave, or of his owner, or the kind or quantity of the produce or commodity bought or sold, need not be stated," is in direct conflict with the 10th section of the bill of rights which secures to every accused, the right " to demand the nature and cause of the accusation against him; and an indictment under this act, that does not allege these facts, is defective and must be quashed.

It is not absolutely necessary to state in the indictment for trading with slaves, the name of the owner of the slave, but the article or commodity bought or sold, must be stated; and on the trial the state should be confined in the proof of the offense to the day named in the indictment.

Error to Madison circuit court.    PERRY, J.

The indictments in these cases were found for violations of the act of the legislature of the 6th March, 1850, " to suppress trade and barter with slaves."

In the two cases against Murphy, the indictment charged, " that Daniel W. Murphy, late of the County of Madison aforesaid, on the 1st day of October, A. D. 1851, at the county of Madison aforesaid, did then and there unlawfully sell spirituous liquors to a slave, without the consent in writing of the master, owner or overseer of said slave."

The indictment against Allman stated neither the name of the slave nor the name of his master, owner, overseer, or employer, nor the commodity alleged to have been sold.

Murphy pleaded in abatement, that Lewis Finley, one of the grand jurors who found the bill, was interested in the penalty or fine to be inflicted under said indictment. The plea was demur-

red to, and the demurrer sustained. He then moved to quash the indictment, as being uncertain, and giving to the defendant no sufficient notice of the nature and cause of the charge brought against him ; which motion was overruled. .

The jury returned a verdict of guilty, and the defendant moved in arrest of judgment, and for a new trial; both which motions were overruled.

William Vincent, the sole witness for the prosecution, testified in substance, that about the latter part of November, or the 1st of December, 1851, he saw a negro man enter the storehouse of the defendant, and speak some words to him, which witness did not hear, when defendant pointed to a barrel with a tumbler upon it, and the negro went to the barrel, drew some liquid in the tumbler, and having drank it gave the defendant half a dime.

Witness did not know positively what was in the barrel, or whether it was spirituous liquor or not; but some month or so before had drawn whisky out of a barrel sitting in the same place, and very much like the barrel from which the negro drew the liquid that he drank. Witness did not know the name of the negro, or his master or employer.

The evidence of the defendant consisted of several orders from various persons to sell liquor to negroes, the orders being without date.

The testimony was of a similar character in both the cases against Murphy.

*A. H. Handy,* for plaintiff in error.

Contended, 1. That the act of 1850, ch. 31, justifying this indictment, is in palpable conflict with the 10th section of the constitution of this state, art. 1, which secured to the accused the right to be notified of the " nature and cause of the accusation against him ;" that this indictment, and the statute authorizing it, violated that right, because, though notice was given of the " nature " of the offense, that is, selling spirituous liquor to a slave, no notice was given of the " cause " of the accusation, which must consist of the specification of the person with whom the offense is charged to have been committed. This is necessary, in order 1st. That the accused may know the offense charged against him, and come prepared with evidence to meet

it; 2d. That he may not be accused of one offense, and tried for another; 3d. That he may not be again tried for the same offense; and therefore, that the charge may be so distinctly specified so as to enable him, if again charged with the same offense, to plead the former acquittal or conviction. Wharton's Crim. Law., 81, 82.

These requisities of certainty must appear in the record, for the only evidence to support the plea of *autrefois acquit* is the record. 1 Arch. Crim. Pl., 84, 85, 119.

2. There is a total absence of all proof on the trial to show any particular slave, with whom the offense was committed. It was, therefore, impossible for the accused to produce the only evidence which this statute permits as a justification, "the original order in writing of the master," etc., because he had no notice whatever as to the particular slave, either by the indictment, or by proof on the trial. If such a prosecution can be sanctioned, it is only necessary, to insure a conviction, to leave the accused in ignorance of who was the "master, owner, or employer" of the slave, and no human skill or wisdom would be able to avoid a conviction, however innocent the accused may be. If the accused produces written orders, how is their effect destroyed? By alleging that the order produced is not applicable to the particular case. But why is this? It is because there is a total failure to indicate in any manner the persons from whom the accused is to show his justification. And thus the citizen is deprived of his liberty and property, without any notice of the "cause of the accusation," cut off from all possibility of justification, and liable to be prosecuted and punished *ad infinitum* upon the very same cause of offense, deprived of the power of ever showing by the record his former acquittal or conviction.

*J. J. Davenport*, for Allman, on same side.

*D. C. Glenn*, attorney general.

YERGER, J.:

The defendant was indicted in the circuit court of Madison county, under the act of 6th March, 1850, "to suppress trade and barter with slaves."

The first section of the act declares " that any person who shall buy, sell, or receive of, to, or from any slave or slaves, any corn, fodder, hay, meal, spirituous liquors, or other produce or commodity whatsoever, without the consent in writing of the master or employer of such slave or slaves, shall be held guilty of a high misdemeanor," etc.

By the second section it is enacted, that in indictments for the offenses named in the first section, it shall not be necessary to charge the kind or quantity of the produce or commodity so bought, sold, or received; nor the name of the slave or of the owner of the slave; and that, on the trial, it shall not be necessary to prove the name or ownership of the slave; but it shall be sufficient to prove, that the buying, selling, or receiving was from, to, or of a negro or mulatto.

The third section declares that on the trial the accused shall only be permitted to prove the consent by the production of the original writing and parol or other evidence of its authenticity.

The counsel of the plaintiff in error contends, that so much of the second section of the act as declares that the name of the slave or his owner, or the kind or quantity of the produce or commodity, need not be stated in the indictment, violates the provision in the tenth section of the bill of rights, declaring that " in all criminal prosecutions the accused shall have a right to demand the nature and cause of the accusation against him."

It cannot be doubted that the legislature had the constitutional power to declare it criminal to commit any of the acts enumerated in the first section of the statute. Nor do we doubt that it might have conditionally prohibited all trade and barter with slaves, whether with or without the consent of the owner. But the possession of these powers would not authorize the denial to the accused of any right guaranteed to him by the constitution, in order to make full defense when charged with violating this law.

The constitutional provision, that every man charged with a crime has a right " to demand the nature and cause of the accusation against him," was intended to secure to the accused such a specific designation of the offense laid to his charge as would enable him to make every preparation for his trial ne-

cessary to his full and complete defense. We, therefore, think, that under it the accused is entitled to demand " such a certain description of the offense charged and statement of the facts by which it is constituted as will fully identify the accusation, lest the grand jury should find a bill for one offense, and the defendant be put upon his trial for another, without any authority; and also that the defendant may know what crime he is called upon to answer, in order that he may be prepared with his evidence, and that his conviction or acquittal may insure his subsequent protection, should he again be questioned on the same ground; and that he may be enabled to plead a previous conviction or acquittal of the same offense in bar of any subsequent proceedings against him."

The indictment ought, in our opinion, to describe and identify the offense with such a degree of certainty that the accused and the court may know, that the offense for which he is put upon his trial, is the same offense with that for which he stands indicted, in order that he may plead in bar a previous conviction or acquittal. An indictment which does not contain this degree of certainty, does not communicate to the accused " the nature and cause of the accusation" against him in the manner contemplated and designed by the bill of rights. Nor has the legislature the power to dispense with such a degree of certainty in indictments.

Do the provisions of the second section of this act dispense with this requisite certainty in indictments framed under it?

The mischief that act was designed to remedy, was trade and barter with slaves, without the consent of those having the management and control of them. The mere act of trading with a slave is no offense against the law. To make it criminal, it must be done without the consent in writing of the master, owner, etc.

But according to the provisions of this statute, every act of dealing with a slave is presumed to be done without authority, and is *prima facie* a violation of the law. Whenever the party accused is proved to have bought, sold, or received any article or produce, or any commodity from a negro or mulatto, the *onus* of exculpation is thrown upon him. He must, then, in order

to discharge himself, prove either that the negro or mulatto was not a slave, or if a slave, that the dealing was with the written consent of the master, etc.    This consent, according to the statute, can only be proved by the production of the original writing.

The accused may also defend himself by showing that, although he did receive a commodity from a slave, yet, in fact, the slave only acted in that instance as the agent of the master.

It is most obvious, then, that, unless the particular act of trading or receiving is stated with sufficient certainty to inform the accused for what he is to be tried, he may be totally unable to defend himself by plea of a former acquittal or conviction, because he would be unable to identify the two charges as relating to the same offense.

Entertaining these views, we have come to the conclusion, that indictments framed in the general manner indicated in the second section of the act do not furnish to the accused " the nature and cause of the accusation against him," in the manner contemplated by the constitution.   They cannot, therefore, be sustained.   We do not think it absolutely necessary to state in the indictment the name either of the slave or of his owner, etc. But it is necessary where the name of the owner, employer, etc., is not given, that the article or commodity should be stated; and that on the trial the state should be confined in its proof of the offense to the day named in the indictment.   It is true that, as a general rule, it is not necessary to prove the offense to have been committed on the day named in the indictment.   But this rule is subject to exceptions, one of which is, that the state shall be confined to that day, if it is necessary to identify the offense.

In Archbold's Cr. Pl., the rule on this subject is stated in the following language : " When the precise date of any fact is necessary to ascertain and determine with precision the offense charged or the matter alleged in excuse or justification, the slightest variance between the pleadings and evidence in that particular will be fatal."   Arch. Cr. Pl., 90.   Of course, where the name of the owner, employer, etc., of the slave is given, there would not be any necessity to name the commodity, or on the trial to confine the state to the day named in the indictment,

as the offense would thereby be sufficiently identified to enable the party to make his defense.

In the present case, the specific article sold is named in the indictment, and the court did not, therefore, err in refusing to quash the indictment or arrest the judgment. But the evidence did not establish the guilt of the accused, and a new trial should have been granted. We, therefore, reverse the judgment, and remand the cause for a new trial.

Judgment reversed, a new trial awarded, and cause remanded.

Let the same order be entered in the next case.

In Valentine Allman v. The State, judgment of the court below is reversed; and this court, entering such order as should have been rendered in the court below, proceeds to arrest the judgment on the verdict of the jury. The indictment in that case does not give the name of the master, etc., or specify the article or commodity sold to the slave.