## The State vs. Cadle.

For a violation of the act (*Pamph. Acts,* 1854, *p.* 38,) making it a misdemeanor for a white person to harbor or entertain any slave without the consent of the owner, and prescribing a penalty of a breach of it, but providing no mode for recovery of the penalty, a party may be held to answer by indictment.

In an indictment under the act making it a misdemeanor for a white person to harbor or entertain a slave without the consent of the owner, it is necessary to aver, as part of the description of the offence, the name of the owner or bailee of the slave.

The omission of the words " contrary to the form of the statute in such case made and provided," does not vitiate the indictment, under our laws (*Dig., chap.* 52, *sec.* 98,) though the offence be created by statute.

It is essential that all indictments should conclude " against the peace and dignity of the State of Arkansas," (*Anderson vs. The State,* 5 *Ark.* 450:) and if there be several counts in an indictment, each one must so conclude, or the Court may well quash the count'in which the proper conclusion is omitted.

*Appeal from Pulaski Circuit Court.*

Hon. John J. Clendenin, Circuit Judge.

Mr. Attorney General Johnson, for the State, contended that the Court erred in quashing the indictment: that the indictment is in the very language of the act creating the offence (*Acts of* 1854, *p.* 38;) and that it is not required, nor is it necessary to state the names either of the slaves harbored or their owner— the name being no part of the description of the offence; that it is not necessary to conclude each count in an indictment " against the peace and dignity of the State"—the indictment so concluding being sufficient.

Jordan, for the appellee; contended that both counts in the indictment, are defective for uncertainty; that the names of the

slaves, and the names of the owner or overseer must be set forth
in the indictment, not only to inform the accused of the charge
against him, that he may prepare for his defence, but to prevent
a second punishment for the same offence by pleading in bar a
former acquittal or conviction; that if the names of the slaves
and the owner be charged in the indictment the defendant
might come prepared to prove his possession was with the con-
sent of the owner; otherwise he could not be so prepared—re-
fering to *State vs. Nuthall*, 1 *Gill* 54; *Whart.* 137; *State vs. Hel-
gen*, 1 *Speers* 313; *R. vs. Compton*, 7 *C. P.* 139; *Com. vs. Cook*,
13 *B. Mon.* 149; *Com. vs. Stout*, 7 *Ib.* 249.

The first count is fatally defective for want of a conclusion—
one count concluding *contra formam, etc.*, does not cure another
without the proper conclusion. *Whart. Cr. L.* 148; *State vs.
Soule*, 20 *Maine R.* 19; *Dig. p.* 63, *sec.* 14.

This is a statutory offence, and no provision is made for en-
forcing the penalty for a violation of the act by *indictment pre-
ferred by a grand jury.*

Mr. Justice HANLY delivered the opinion of the Court.

At the June term of the Pulaski Circuit Court, 1857, the ap-
pellee was indicted under the following statute: " That if any
white person shall be caught in company with negroes, in sus-
picious places, or shall be found in company of slaves at any
unlawful meetings, or shall *harbor or entertain* any slave, or
shall be found drinking, or gaming with any slave, without the
consent of the owner or overseer of such slave, shall be deemed
guilty of a misdemeanor, cognizable in the Circuit Court of the
county, and fined and imprisoned at the discretion of the jury:
such fine not to exceed one hundred dollars, and such imprison-
ment not to be less than thirty nor more than ninety days."
See *Pamph. Acts*, 1854, *p.* 38.

The indictment, so far as it is material to this case, is as fol-
lows: " That George Cadle, he being a white person, late of
said county, on the twenty-sixth day of December, A. D., 1856,
in the county aforesaid, unlawfully did *harbor* certain slaves,

and that without the consent of the owner, or the overseer of such slaves being then and there first had and obtained. And the jurors aforesaid upon their oaths aforesaid, do further present, that the said George Cadle, he being a white person, on the day and year aforesaid, and in the county aforesaid, did entertain other slaves, and that without the consent of the owner or overseer of such slaves being first then and there had and obtained, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Arkansas."

At the November term after the indictment was found the appellee appeared in person, and by his attorney interposed a motion to quash the indictment.

The grounds set out in the motion to quash are as follows:

1. There is no law authorizing an indictment in such case.

2. There is no offence charged in the indictment.

3. It is bad for uncertainty—does not specify the names of the slaves, or the name of their owner or overseer.

4. There is no conclusion to the first count.

The motion to quash was sustained, and the indictment accordingly quashed. The State excepted and appealed.

We are called upon to determine the correctness of this judgment. In doing this we shall consider each of the grounds assumed in the motion, and in the order in which they are stated.

1. Is there a law authorizing an indictment in such case?

There can be no doubt of this. The extract which we have made from the act of 1854, clearly inhibits white persons to *harbor or entertain* slaves without the consent of their masters or owners. A penalty is prescribed by the act for a breach or violation of its provisions. Besides this, the act in question declares that its breach or violation shall be a misdemeanor.

A crime or misdemeanor consists in a violation of public law, in the commission of which there shall be a union, or joint operation of act and intention, or criminal negligence. See *Digest chap.* 51, *Part* 1 *Sect.* 1 *p.* 319.

It is declared in our Bill of Rights: " That no man shall be
put to answer any criminal charge, but by presentment, indict-
ment or impeachment.    See *Cons. Ark. Art.* 2, *sec.* 14.

It is also provided by our statute that: " In all cases where a
fine or penalty shall be imposed by any statute of this State, as
a punishment for any offence, and no provision is made for the
recovery thereof, the same may be recovered by indictment.
See *Digest, chap.* 52, *sec.* 90, *p.* 401.

The Court below was not warranted, therefore, in quashing
the indictment on this ground.

2.  Does the indictment charge an offence?

The statute provides that if any white person shall *harbor or*
*entertain* any slave without the consent of the owner or over-
seer, he shall be deemed guilty of a misdemeanor.

The indictment charges the appellee with being a white person,
and that he did *harbor and entertain* certain slaves without the
consent of their masters or owners.

The offence charged against the appellee is one created by
the statute.    It is a well settled general rule, that in an indict-
ment for an offence created by statute, it is sufficient to describe
the offence in the words of the statute: and if in any case the
defendant insists upon a greater particularity, it is for him to
show, that from the obvious intention of the Legislature, or the
known principles of law, the case falls within some exception
to such general rule.    See *Whart. Cr. Law,* 132; *Lemon vs.*
*The State,* 19 *Ark. Rep.* 173, *and cases cited.*

The indictment does charge an offence: but whether it is
charged with sufficient precision or certainty, under the rules
of criminal pleading, we will enquire and determine under the
next head.

Is the offence charged with sufficient precision or certainty?

The general rule in reference to the certainty usual in indict-
ments for offences created by statute, has been shown above.
We will now enquire whether the offence charged against the
appellee in the indictment before us, is of that character which
requires greater particularity than in ordinary cases.

It is insisted by the counsel for the appellee, that the indict-
ment in question is defective, because it fails to specify the
names of the slaves charged to have been *harbored or entertained*,
or those of their owners or overseers; maintaining, as he does,
that without the offence is defined by such circumstances as
those stated, he would not be able to plead a previous convic-
tion or acquittance of the same offence, nor be enabled to
prepare for his defence in the particular case designed to be
proceeded in.

In all criminal prosecutions the accused hath a right to
demand the nature of the accusation against him, and to have
a copy thereof. *Const. Ark., art.* 2. *sec.* 11. It follows, there-
fore, that the offence must be so described in the indictment as to
put the accused in possession of this constitutional right. See
*Bradford vs. The State,* 3 *Humph. R.* 372.

The strictness formerly required in indictments, was regarded
by the greatest judges as a blemish and inconvenience in the
law rather than a public advantage. See 2 *Hale Pl. Cr.* 193;
1 *Chit. Cr. L.* 170; 1 *Leech* 383; 1 *East* 311; 5 *East* 260; *State
vs. Pearce, Peck. (Tenn.) Rep.* 67.

The description of the offence charged in an indictment,
ought to be competent to three purposes: 1. To the information
of the defendant, that he may know what offence he is called
upon to answer. 2. To the information of the Court, that it
may see a definite offence on record to which to apply the
judgment, and the punishment, which the law prescribes. 3.
To the protection of the defendant against a further prosecution
of the same offence. See *Whart. Cr. L.* 121, 122; *State vs.
Pearce, ub. sup.*

The defendant is not notified of the charge against him
unless the indictment points out the specific nature of the
charge in terms of reasonable certainty. See *State vs. Kilgore,*
6 *Humph. R.* 45.

As held by this Court in *Moffat vs. The State* (6 *Eng. R.* 174),
convenient certainty in indictments upon statutes, is all that
can be required; for, say the Court, in that case: " to require a

minute specification of particulars would incumber the record unnecessarily, or jeopardize the success of the prosecution, although such greater certainty, in some cases, might materially assist the party's defence."

Keeping in view the foregoing principles and propositions of law, let us for a time call to our aid the adjudications of other courts upon statutes possessing some analogy to the one before us in the present case, as far as principle is concerned; for our common law system, as remarked by a learned judge, consists in the applying to new combinations of circumstances, those rules of law which we derive from legal principles and judicial precedents; and for the sake of attaining uniformity, consistency and certainty, we must apply those rules, where they are not plainly unreasonable and inconvenient, to all cases which arise, and we are not at liberty to reject them, and to abandon all analogy to them, in those to which they have not yet been judicially applied, because we think the rules are not as convenient and reasonable, as we ourselves could have devised. " It appears to me," said PARKER, J., in *Morehouse vs. Rennell*, (1 *Cl. & Fin*. 546), " to be of great importance to keep this principle of decision steadily in view, not only for the determination of the particular case, but for the interests of law as a science."

It is a general rule that the name of the party injured by the offence charged, must be stated in the indictment. See *Whart. Cr. Law* 108; 1 *Chit. Cr. Law* 212; *State vs. Parnell*, 16 *Ark. R*. 506; *Cameron vs. State*, 13 *Ib*. 712.

We proceed to give instances in which it has been held, under different statutes, that the name of the injured party must be stated in indictments founded on such statutes.

Under the act of 9 GEO. I, *ch*. 22, it is made criminal for any person " unlawfully and maliciously to cut down, or otherwise destroy, any tree planted in any avenue, or growing in any garden, orchard or plantation, for ornament, shelter or profit." Under this act, it is held to be material to lay in the indictment

the *name of the owner.* See 3 *Chit. Cr. L.* 1117; *Howarth vs. The State, Pcck (Tenn.) R.* 96.

In South Carolina there is a statute making it an indictable offence to trade, or barter with slaves. It is held under this statute, that it is material to state, in the indictment, the name of the owner of the slave traded or bartered with. See *State vs. Scurry,* 3 *Rich. R.* 68.

So, in the same State, under the act of 1754, making it penal for any person to aid a slave in running away and departing from his master's employment, it has been held that the name both of the slave and his master should be stated or given in the indictment. See *State vs. Blease,* 1 *McMull. R.* 472: See, also, the precedent in the case of *The State vs. Turner,* 2 *McMull. R.* 399.

It is also the practice in Virginia, under the act making it felony in any person, " who shall carry, or cause to be carried, any slave or slaves out of the commonwealth, or shall carry or cause to be carried any slave or slaves out of any county or corporation within the commonwealth, into any other county or corporation, without the consent of the owner or owners of such slave or slaves," (*Rev. Code, ch.* 111, *sec.* 30, *p.* 428), to state the name both of the slave and his owner. See *Com. vs. Peas;* see 4 *Leigh's Rep.* 692.

In *Ellis vs. The People,* 4 *Scam. R.* 508, the appellant was indicted for harboring a negro slave owing service to Chancy Durkee: it was held that it was not necessary to state the name of the slave, the person to whom he owed service being given

It is the practice in Tennessee, under the act of 1806, *chap.* 32, *sec.* 4, making it a misdemeanor to harbor a slave, to state, in indictments under the act, the name of the owner of the slave. See *State vs. Jones,* 2 *Yerg. R.* 22.

In Mississippi, there is a statute " to suppress trade with slaves, and for other purposes." It has been held that an indictment, framed in a general manner under this statute, would be invalid—that to make the indictment good, it should contain an allegation of quantity or quality of the produce

alleged to have been sold or received—the name of the slave, and the name of the owner of such slave. See *Murphy vs. The State*, 24 *Miss. R.* 590; 28 *Ib.* 654.

By the Maryland act of 1817, *chap.* 227, *sec.* 1, it is made unlawful for any licensed retailer, in certain prescribed counties, to permit any free negro or mulatto, or any negro or mulatto slave to be in the store-house, or other building, where any such licensed retailer may be accustomed to sell distilled spirits, or other liquors, between sun-set in the evening and sun-rise of the succeeding day: *Held*, That in an indictment under this act it is necessary to allege the names of the slave and his master, if known. See *State vs. Nuthall*, 1 *Gill R.* 54.

In Kentucky, there is an act making it a penal offence to sell spirituous liquors to slaves without an order from their master authorizing the sale: *Held*, That a presentment under this act should state the name of the owner of the slave, or the person having control of him. See *Com. vs. Cook*, 13 *B. Mon.* 149.

In this State, up to the passage of the act of 1854, it was held necessary to the validity of indictments framed under section 8 of the Gaming Act (see *Digest, chap.* 51, *Part* 8, *Art.* 3, *sec.* 8, *p.* 367) that they should set out the names of the persons by whom the games were played, as a part or matter of description of the offence. Se *Barkman vs. State*, 13 *Ark. R.* 703; *Johnson vs. State*, *Ib.* 684; *Jester et al vs. State*, 14 *Ib.* 552; *Stith vs. State*, 13 *Ib.* 680; *Drew vs. State*, 5 *Eng. R.* 82; *Parrott vs. State*, *Ib.* 572; *Moffatt vs. State, ub. sup.*

As the case before us bears a very strong analogy, in principle, to the many cases we have cited, and as it falls within the general rule, that indictments for offences against the person or property of individuals must state the name of the party injured, if known, we feel that we would be violating principle, to hold otherwise than that the indictment in question is defective, because it omits to state the name of the owner or overseer of the slaves charged to have been harbored or entertained by the defendant, which we regard as essential under

the act on which the indictment was framed, as a necessary part of the description of the offence. In announcing this conclusion, we desire to state that we do not intend to impugn the construction placed upon the Gaming Act of 22d January, 1855, in *Medlock vs. State*, 18 *Ark. Rep.* 363, or that placed on the act concerning Sabbath breaking, in *The State vs. Parnell*, 16 *Ark.* 506, it being our purpose to place the decision of this case mainly upon the fact that the offence charged in the indictment amounts to, or is, in effect, a trespass against the property of an individual, and omits to state the name of the owner or bailee of such property; that being, as we have before stated, a necessary part of the description of the offence.

We hold, therefore, in accordance with the above views, that the Court below did not err in quashing the indictment on this ground set out in the appellee's motion.

4. Is the first count bad for want of a conclusion?

By recurring to this count it will be observed, that the usual conclusion—" against the form of the statute in such case made and provided, and against the peace and dignity of the State of Arkansas"—is omitted.

Where an offence is created by statute, or the statute declares a common law offence, committed under peculiar circumstances not necessarily included in the original offence, punishable in a different manner from what it would be without such circumstances; or where the nature of the common law offence is changed by the statute from a lower to a higher, as where a misdemeanor is changed into a felony, the indictment must be drawn with reference to the provisions of the statute, and conclude *contra formam statuti*. See *Whart. Cr. L.* 133.

But it is provided by our statute, that no indictment shall be deemed invalid, or be quashed, because of the omission therein of the words, " with force and arms," or words of similar import, or because of the omission therein to charge any offence, " to have been committed contrary to the statute or statutes, notwithstanding such offence may have been created,

or the punishment thereof declared by statute." See *Digest, chap.* 52, *sec.* 98.

Thus we see, it has been thought proper by our Legislature, to alter the law, as it had existed for ages, and to make for the courts of this State a new rule in such cases. The law has to be administered and declared as we find it. The omission of the words, " against the form of the statute in such case made and provided," does not vitiate the indictment before us, under our statute.

But, as shown, the words: " and against the peace and dignity of the State of Arkansas," are also omitted in this count. It is ordained by the constitution of this State that " Indictments shall conclude " *against the peace and dignity of the State of Arkansas.*" See *Const., Art.* 6, *sec.* 14.

It is essential that all indictments should so conclude, to be valid. See *Anderson vs. The State,* 5 *Ark. Rep.* 450.

It may be said that, inasmuch as the last count contains the usual and correct conclusion, the defect in the first count is thereby cured. But it seems that one count with a proper conclusion does not help another without it. See *Whart. Cr. L.* 148; *State vs. Soule,* 20 *Maine R.* 19.

The Court may have well quashed the first count for want of the proper conclusion as just shown.

The offences charged in the two counts are substantially the same. If the offence had been sufficiently described in the second count, that would have been all sufficient under the statute.

For the reasons above expressed, we are of opinion the Court below did not err in quashing the indictment in this behalf. We therefore affirm the judgment.