# THE
# TEXAS LAW REPORTER.

AUSTIN, TEXAS, JUNE, 1882.

## N. B. WHITWORTH vs. THE STATE.

IN THE COURT OF APPEALS, AUSTIN TERM, 1882.

In this opinion the conclusions reached are:

1. That the constitutional "right to demand the *nature* and *cause* of the accusation against him" guarantees to the accused that the indictment or information shall state every fact and circumstance necessary to a certain, specific and complete description of the particular offense, so as to characterize it and make it judicially appear upon the record of the cause.

2. That a person tried for a crime not so set forth and described in the indictment in the case, no matter how fully it may describe any other, is not held to answer for that particular offense, "on indictment of a grand jury," as contemplated by the bill of rights.

3. That a conviction for a crime not so made to appear upon the record by the indictment, is not "by the due course of the law of the land."

4. That these constitutional provisions are addressed to, and control the judiciary, as well as the legislature, and require this court to reverse a judgment based on a violation of either of them, whenever properly brought before it on appeal, in order that the citizen may not be deprived of life, liberty or property without due process of law."

5. That the controlling power of these provisions cannot be removed, contracted nor limited by any legislative enactment, but must remain complete as part of the supreme law of the land, in favor of any person accused of crime in this State, until the State in convention, by the use of its original sovereign powers—after the United States shall' have removed the binding effect of the Fourteenth Amendment of the Constitution of the United States—remove the three provisions from its constitution.

6. To allow the indictment for a greater to sustain a conviction for the lesser offense, it must contain the statement of every inculpatory fact and circumstance material to the description of the latter, and the two must be alike as to all the essential constituent elements of the lesser offense, so that the allegation will include it, without contradicting the material averments of the greater. Whenever an indispensible constituent fact or circumstance of the lesser is not included in the greater, the latter cannot be made to include the former, no matter how many other facts and circumstances may be common to both.

Appeal from Erath county.—Dissenting opinion by Hurt, J.—Appellant was tried upon an indictment containing the usual al-

legations of theft, to-wit, that he fraudulently took the property from the possession of the owner without his consent, with the essential intents, etc. He was convicted of embezzlement, which he insists was unconstitutional, and his counsel, in their very able brief and written argument, urge the unconstitutional grounds for a reversal of the judgment.

My brethren have held this conviction legal: and this opinion is written to manifest some of the reasons why their ruling is not assented to. In support of the conclusious reached by the majority of the court, it is urged in the opinion written by Judge Winkler, that "the statute laws of this State enumerate certain offenses, which include offenses of a less degree of culpability than the main offense charged. Thus, it is provided, that the offense of murder includes the lesser degree of culpable homicide, and also an assault with intent to commit murder." And upon a similar provision, article 714 of the Code of Criminal Procedure, they base the legality of the judgment.

Let this article of the Code be tried in the crucible of appellant's constitutional safeguards, to ascertain how much actual law is contained in its sixth sub-division, to-wit, theft, "which includes swindling, *embezzlement*, and all unlawful acquisition of personal property punishable by the Penal Code."

The following are among the constitutional guarantees to which every person is entitled in this State, when prosecuted for crime.

1.  He shall have the right to demand the *nature* and *cause* of the accusation against him.

2.  And no person shall be held to answer for a criminal offense, unless on indictment of a grand jury. (Bill of Rights, sec. 10.)

3.  No citizen of this State shall be deprived of life, liberty, property, or privilege, outlawed, exiled, or in any manner disfranchised, except by due course of the law of the land. (*Id.*, sec. 19.)

4.  Nor shall any State deprive any person of life, liberty, or property without due course of law. (U. S. Const. amendment 14, sec. 1.)

What is meant by this right to demand the *nature* and *cause* of the accusation? Is it merely the right to have a copy of whatever written charge may have been filed in the court against him? Is it met, and satisfied by a pleading which does not state the material elements of the offense for which he is to be tried? Does it permit him to be convicted of embezzlement upon an indictment which does

not state a single one of the particular facts or circumstances which would render him guilty of that offense ? If not, why not ? Because it has always required "such a certain description of the offense for which he is to be placed in jeopardy, and statement of the facts by which it is constituted, as will fully identify the charge against him, lest the grand jury should find a bill for one offense, and the defendant be put upon his trial for another, without any authority," and without his knowing what crime he is required to answer, or being prepared with his evidence to meet the charge, and in such manner that the record of his conviction or acquittal would insure his subsequent protection against another prosecution on the same ground. And because this right is incompatible with any power of a legislature to dispense with any material allegations in the indictment, requisite to describe and identify the particular offense with that degree of certainty which will enable the accused and the court to know that the offense for which he is put upon his trial, is the *same offense* with that for which he stands indicted, in order that he may plead in bar a previous conviction, or acquital.

The Supreme Court of Mississippi says: "An indictment which does not contain this degree of certainty does not communicate to the accused the *nature* and *cause* of the accusation against him in the manner contemplated, and designed by the bill of rights; nor has the Legislature the power to dispense with such a degree of certainty in indictments." (Murphy vs. The State, 24 Miss., 594.)

In Williams vs. the State, 42 Miss., Peyton, J., says: " It is necessary to specify on the face of the indictment the criminal nature and degree of the offense, which are conclusions of law from the facts, and also the particular *facts* and *circumstances* which render the defendant guilty of that offense, for the following reasons: [Italics ours.]

1. " In order to identify the charge, lest the grand jury should find a bill for one offense, and the defendant be put upon trial for another, without any authority.

2. " That the defendant's conviction or acquittal may inure to his subsequent protection should he be again questioned on the same grounds; the offense, therefore, should be defined by such circumstances as will in such case enable him to plead a previous conviction or acquittal of the *same offense.*

3. " To warrant the court in granting or refusing a particular right or indulgence, which the defendant might claim as incident to the nature of the case.

4. "To enable the defendant to prepare for his defense in the *particular case*, or, if he prefers it, to submit to the court by demurrer, whether the facts alleged (supposing them to be true) so support the conclusions in law as to render it necessary for him to make any answer to the charge.

5. "Finally, to enable the court, looking at the record after conviction, to decide whether the facts charged are sufficient to support a conviction of the *particular crime*, and to warrant their judgment."

The constitutional right guarantees this degree of certainty in every indictment (Murphy vs. the State, 24 Miss., 594), and the accused cannot waive it. (Newcomb's case, 4 George, Miss., 383.)

In the case in hand the *particular* offense charged in the indictment is theft, and the material elements of the charge as specified, are:

1. Fraudulently taking from the possession of the owner without his consent.

2. Intent on part of the accused to deprive the owner of the value thereof.

3. And intent to appropriate the same to his own use.

Does either of these three constitute an essential ingredient in the statutory definition of embezzlement? Would embezzlement be the conclusion of law so supported by them as to render it necessary for the accused to make any answer to the charge? Would a copy of them so inform the accused of the *nature* and *cause* of a charge of embezzlement, as to enable him to prepare for his defense against it? Would they warrant the court in granting him the right to disprove the existence of any trust, agency, or bailment, or to prove that the trust was executed according to its terms? Would they be sufficient to warrant the court, looking to them, and the plea of not guilty alone, in allowing him to introduce proof to negative the fact of there ever having been any breach of trust on his part, or any appropriation of the property to his own use? Would they not be as much calculated to admit proof on part of the accused that he did not murder, rob or rape the owner of the property, as to warrant any of these? Do they constitute such a clear, specific and precise statement of all the facts and circumstances of embezzlement as would fully identify the *particular* crime for which appellant was convicted? Would they be sufficient to support a plea of former conviction against an

indictment charging embezzlement in the words of the statutes? What are the facts constituting embezzlement? Let the opinions of this court answer.

Clark, J., in Webb vs. the State (8 Ct. App., 311), says: "In order to sustain a prosecution for embezzlement against an agent of a private person or corporation, four distinct propositions of fact must be established in evidence beyond a reasonable doubt. These are as follows:

1 "That the defendant was the agent of the person or corporation as alleged, and by the terms of his employment was charged with the duty of receiving the money of his principal.

2. "That he did so receive money belonging to his principal.

3. "That he received it in the course of his employment.

4. "That he embezzled, misapplied or converted it to his own use. (Leonard vs. the State, 7 Texas Ct. App., 417; *ex parte* Hadley, 31 Cal., 108.")

White, P. J., in Goddy vs. the State (8 Ct. App., 128), says: "The indictment is defective in that it does not allege by direct averments that at the time of the conversion the animal was in the possession of the defendant by virtue of his agency, or of the bailment. An indictment upon a statute must state all such facts and circumstances as constitute the *statute* offense so as to bring the party indicted precisely within the provisions of the statute. The facts and circumstances which are necessary to constitute a *complete* offense, must be stated with distinctness and certainty. An indictment for this offense was held bad by our Supreme Court in the State vs. Johnson, 21 Texas, 775, because it did not distinctly state that the defendant had the possession or care of the money by virtue of his clerkship when he converted it to his own use. Such allegation is required by all the standard precedents."

And in Baker vs. the State, 6 Ct. App., 347, he says: "Because the charge of the court permitted the jury to find the defendant guilty upon a state of case other than that as made in the indictment, * * * the judgment as rendered below is reversed and the cause remanded."

In the State vs. Johnson (21 Texas, 775), Roberts, J., says: "It is the breach of trust that constitutes the gist of the offense; unless a duty or trust has been imposed, there can be no breach of trust."

What one of these requisites is contained in the indictment in the

case in hand ?   It is not averred that he received money belonging
to his principal.   No agency, employment, trust, nor breach of
trust is alleged.   Nothing is charged to have been embezzled by
appellant.   Then how can it be  admitted that this indictment con-
tains a statement of "all such facts and circumstances as constitute
the statute offense" of embezzlement, so as  to  bring  the appellant
"precisely within the provisions of the  statute ? "   If a failure  to
allege "that at the time of conversion" the property  embezzled
"was in the possession of the defendant  by virtue of his agency, or
of the bailment," rendered an  indictment bad, and required this
court to reverse the judgment based on it, how has it transpired
that an indictment stating none of the constituent elements of
embezzlement, as it is defined by statute, is sufficient in law to sup-
port a judgment of conviction for that offense?   Was not the
state of case on which the jury were allowed to find the defendant
guilty in this case, "other than that as made in the indictment ? "
And is not this a conviction for  a crime, the  very *gist* of  which is
omitted in the indictment ?

The opinion of my brethren seems to rest upon the position that
all this certainty of statement of "all such facts and circumstances
as constitute the  statute offense, so  as  to  bring the party indicted
*precisely* within the provisions of the statute," was required afore-
time, simply because there was not then a statute providing for the
conviction of the accused, for an offense not charged in the indict-
ment, and of the *nature* and *cause* of which he had not been in-
formed, *but that it is so nominated in the statute now.*

Have we not already seen that the legislature has no power under
the Constitution to so nominate by statute ?   Does not the consti-
tutional right to "demand the *nature* and *cause* of  the accusation".
forbid its being so nominated ?

In the State vs. Duke (42  Texas, 461–2), Gould J., says:   "But
being essential parts of the description of the offense, a statute au-
thorizing their omission would be in violation of  the constitutional
right to be exempt from answering any criminal charge but on in-
dictment or information, and of the guaranty that no citizen of
this State shall be deprived of "life, liberty, property, privilege, out-
lawed, exiled or in any manner disfranchised, except by due course
of the law of the land"—and he cites in support of this position the
following authorities:   Hewett vs. the State, 25 Texas, 722; The
State vs. Leonard, 47 Me., 426;  Murphy vs. the State, 24 Miss.,

390; 26 Miss., 637: Norris vs. the State; 33, Miss., 373; Niles vs. the State, 24 Ala., 672.

After this opinion construing two of the constitutional guarantees and reaffirming the cases construing the "right to demand the *nature* and *cause* of the accusation," the constitutional convention readopted two of the clauses and added the other, which must be taken as a sovereign adoption of the construction so placed upon them.

In Bryan vs. the State (45 Alabama, 88), Peck, C. J., says: "To hold that these, or other words used in the statute as descriptive of the offense, may be omitted in the indictment, because they are not in the form given in the appendix, will be to set up the form above the statute. This should not be done. Therefore, an indictment that strictly pursues the form will be insufficient if the form is defective in matter of substance. This opinion is not in conflict with any of the cases heretofore decided by this court, in which it is held, that an indictment in the form given in the appendix of the Code is sufficient, because, in *none* of these cases does the form used omit any *statement, or word required to make out every material ingredient in the description of the offense charged.*"

In Foster vs. the State (39 Alabama, 233), which was a prosecution upon an indictment charging larceny from a storehouse, and in a second count for receiving stolen goods, and to the entire indictment a plea of *autrefois acquit* interposed, Walker, C. J., says: "An acquittal from the charge of larceny cannot bar a prosecution for receiving stolen goods. This is ascertained by applying the *established test, whether the facts alleged in the indictment for the latter offense, if proved to be true, would have warranted* a conviction on the first indictment. The *constituents* of the two offenses of larceny and receiving stolen goods are altogether different. In the former offense, the accused is guilty of the felonious taking and carrying away of the goods of another. In the latter, he is guilty of receiving goods which had been taken and carried away by another. Under an indictment for the former there can be no conviction, if the evidence proves guilt of the latter.   *   *   *   *   *   The offense of larceny is perfected before that of receiving stolen goods can be perpetrated. The case in hand cannot therefore fall within the principle which declares that an acquittal of one felony is a discharge of any other offense that is an ingredient or accompaniment of it."

Is it not equally certain that the *constituents* of theft and embezzlement " are altogether different ?" In the former the accused is guilty of fraudulently taking the goods of another from the possession of the owner with certain intents. In the latter he is guilty of fraudulently appropriating goods or money he has lawfully received in trust, thereby committing a breach of trust. And with equal force of reason it may be said that " under an indictment for the former there can be no conviction if the evidence proves guilt of the latter." The one is committed in the taking of possession of the property, and is perfected as soon as that is so acquired, but possession must be lawfully obtained under the solemn engagement of a trust or honest duty, before the other can be committed. In either, the state of case is such as to exclude the possibility of the other.

" The object of the indictment being to give the accused reasonable notice of the cause for which he is called upon to make his answer, in order that he may prepare for his defense, and that by its averments he may be protected against a second trial for the same offense, neither of these is approached by specifications which need not be proved to establish the defendant's guilt of the *particular crime* for which he is convicted." (2 Cooley's Crim. Law, 149.)

Mr. Bishop says that " where offenses are included within one another, a party indicted for any one of them may be convicted of any lower one, unless, as does not often happen, the allegation is in a form which does not properly charge the lower; while, *of course, if it is in such form, the want of allegation will be fatal to any verdict found for the lower.*" (1 Bish. Criminal Law, 807, 4th ed.) " Whatever the offense alleged, any other offense may be shown to have been committed, and the indictment will be sufficient, *provided the offense proved is included also within the words of the allegation.*" (*Id.*, sec. 809.)

Again, after treating of various offenses embracing lower ones, the same author says: " The law condemns no one until *the matter has been duly charged* against him. Therefore, as already mentioned, none of the foregoing doctrines apply where the thing proved is not sufficiently embraced within the allegation." (*Id.*, sec. 813.)

In the present case, the offense proved is not even indicated by the allegation, the words of which exclude the possibility of its being included; nor is a single specification contained in the charge

in the indictment required to be proved to establish embezzelment. So, by every known rule of pleading and proof, this conviction was without any indictment, or written charge whatever, as to the crime of which appellant was convicted.

This right of the accused to demand the *nature* and *cause* of the accusation against him," as contained in the fourteenth amendment of the Constitution of the United States, has been construed by the Supreme Court of the United States to much the same effect as the construction placed upon it by the State courts.

In United States v. Mills (7 Pet., 142), it was construed to mean that the indictment *must* set forth the offense "with clearness and all necessary certainty, to apprise the accused of the crime with which he stands charged." And, in United States v. Cook (17 Wall., 174), to require that "every ingredient of which the offense is composed must be accurately and clearly alleged."

In United States v. Cruikshank et al. (92 United States, 558–9), the same doctrine, to the full extent of that laid down in the Mississippi cases, *supra*, is reaffirmed; and, in the opinion, Chief Justice Waite further says: "In Maine it is an offense for two or more to conspire with the intent, unlawfully and wickedly, to commit any crime punishable by imprisonment in the State prison; but we think it will hardly be claimed that an indictment would be good under this statute, which charges the object of the conspiracy to have been wilfully and wickedly to commit, *each, every, all and singular* the crimes pumishable by imprisonment in the State prison. All crimes are not so pumishable. Whether a particular crime be such a one or not, is a question of law. The accused has, therefore, the right to have a specification of the charge against him in this respect, in order that he may decide whether he should present his defense by motion to quash, demurrer, or plea; and the court, that it may determine whether the facts will sustain the indictment. * * * Therefore, the indictment should state the particulars, to inform the court, as well as the accused. It must be made to appear— that is to say, appear from the indictment, without going further— that the acts charged will, if proved, support a conviction of the offense alleged."

The court and the accused are not to look further than the face of the indictment for the specification of the offense of which the latter can be convicted. They are not to consider each, every, all and singular the offenses described in the Penal Code, nor are they

required to search the Code of Criminal Procedure to ascertain, just how many incompatible crimes, the acts constitituting which are not made to appear from the indictment, may be proved against the accused on the trial.    They are relieved from this by the constitutional right of the ." accused " to demand *the nature and cause of the accusation against him,* and such was the universal construction given it when Texas placed it in her Constitution.

It is not, therefore, within the scope of legislative authority, under our Constitution, to provide for the conviction of the accused for a crime which is not embraced within the allegations of the indictment on which he is tried; and it makes no difference what form the legislation for such purposes may assume, it must be void.

The sixth sub-division of article 714 of the Code of Criminal Procedure then, viewed in the light of the Constitution and tested by the safeguard it guarantees to appellant, contains no *actual law* affecting this cause.

In this State "no person shall be held to answer for a criminal offense unless on indictment of a grand jury," etc., and, after what has already been said, it will not require a very great amount of investigation to ascertain whether this requirement was complied with in the present case.

What is meant by the word indictment as used in this clause of the Constitution ?   How are we to ascertain its meaning ?   Does it mean anything which may in the future be provided by statute ? Or does it mean precisely what was understood by the term "*indictment of a grand jury*" in this country and in the judicial and legislative parlance at the time the Constitution was adopted ? That the affirmative of the latter question is true needs no authority, at this late day, to satisfy the legal mind.

Then what is the meaning of the term in the language of Texas and her legislature and judiciary ?

By the Code of Criminal Procedure in force when the last Constitution was adopted, "An indictment is the written statement of a grand jury, accusing a person, therein named, of some act or omission which, by law, is declared to be an offense (art. 394).   It required the offense to be set forth in plain and intelligible words (art. 395), and with such certainty as will enable the accused to plead the judgment that may be given upon it, in bar of any prosecution for the same offense."   (Art. 398.)

Justice Roberts, in Hewitt vs. the State, 25 Texas, 725, speaking

of the language of article 394, says: "At the adoption of our Constitution, and for a century previously, both in England and America, this is what was understood as constituting an indictment."

In the State vs. McCormick, 22 Texas, 301, it was held to require a statement of everything which it is necessary to prove; this was repeatedly reaffirmed by our Supreme Court. (Alexander vs. the State, 29 Texas, 495.)

Then in the legislative and judicial parlance of the State, it meant, "The written statement of a grand jury accusing a person, therein named, of some act or omission, which, in law, is declared to be an offense, setting it forth in plain and intelligible words, and stating everything which it is necessary to prove with such certainty as will enable the accused to plead the judgment that may be given upon it, in bar of any prosecution for the same offense," and this much, at least, was meant by the term in the Constitution.

The convention did not stop to define this term. They used it as a term well defined and understood. They meant just what it was then understood to be with all of its incidents.

Can the Legislature remove any of these incidents? If so, which, and how many? If it can authorize the omission of one, why not two, three, four, or all of them? If it can provide for the omission of a single necessary ingredient in the description of the offense charged, it can authorize the omission of all words descriptive of the act or omission, which, by law, is declared to be an offense. Thus it might provide for a trial of a citizen upon a written statement of a grand jury accusing him of having violated the law, and authorize the prosecution to prove, on the trial, any act or omission violative of any provision of the written law. But it was for the purpose of preventing such unjust and tyrannical legislation and its consequences, that the requirement of "an indictment of a grand jury" was inserted in the Constitution.

Were it otherwise, the grand jury might indict for theft upon a state of case sufficient as presented to them, to warrant the charge, and on trial, the defendant show his innocence of such offense, yet the prosecution could abandon that accusation and go on trying to establish embezzlement, swindling, receiving stolen goods knowing them to be stolen, obtaining property upon false pretences, and if in relation to live animals, driving them beyond their accustomed range, taking the chances on making a *prima facie* case, of either or all of them, and so procure a conviction for an offense which

the grand jury never heard of during their investigation, and for which they had no thought of indicting the accused. Thus the indictment presented would be made the mere stalk or stub on which the prosecution might, at the trial, engraft such charges as seem least liable to be met, or of which there might be the greatest probability of the defendant having no information, so as to insure his conviction before he could prepare to answer. Such a construction would make the right not to be "held to answer for any criminal offense except upon indictment of a grand jury," a deception, a fraud, a falsehood, to entrap innocent persons, who confide in the truth of the law and its solemn proceedings, and wrongfully convict them, without any indictment of a grand jury charging them with the crime for which they are held to answer.

There must be such an indictment, so accusing the defendant of the *very crime* of which he is convicted, to sustain the judgment, and the want of it will not be supplied by one charging another offense by allegations which do not include that for which the party is convicted.

The record of conviction for embezzlement, in the case in hand, contains no indictment even attempting to describe or set forth this offense, and therefore the defendant was held to answer for this criminal offense without indictment therefor, and without any information charging him with the same, in violation of the constitutional provision requiring an indictment or information.

As the judgment in this case may deprive the defendant of both liberty and property, it may well be asked whether it is done *"by due course of the law of the land."*

A few authorities as to what is meant by the term will serve as a basis for what will here be said in regard to its binding effect on legislative and judicial departments of government.

Mr. Cooley says: "Perhaps no definition is more quoted than that given by Mr. Webster in the Dartmouth College case: 'By the law of the land is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial.' The meaning is that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society. Everything which passes under the form of an enactment is not, therefore, to be considered the law of the land."

The definition here given is apt and suitable as applicable to judicial proceedings, which cannot be valid unless they proceed upon inquiry, and render judgment only after trial. It is entirely correct, also, in assuming that a legislative enactment is not necessarily the law of the land. The words, by the law of the land, as used in the Constitution, do not mean a statute passed for the purpose of working the wrong. That construction would render the restriction absolutely nugatory, and turn this part of the Constitution into mere nonsense. The people would be made to say to the two houses: You shall be vested with the legislative power of the State, but no one shall be disfranchised or deprived of any of the rights or privileges of a citizen, *unless you pass a statute for the purpose.*

See Taylor vs. Porter, 4 Hill, 140; Jones vs. Perry, 10 Yerger, 50; Erwin's appeal, 16 Penn. St., 256; Arrowsmith vs. Burling, 4 McLean, 598; Lane vs. Darman, 3 Scam., 238; Reed vs. Wright, 2 Green (Iowa), 15; Woodcock vs. Burnett, 1 Cow., 740; Kinney vs. Beverly, 2 H. and M., 536; Commonwealth vs. Byrne, 20 Grat., 165; Brown vs. State, 30 Wis., 129; and the last case also in 11 Am. R., 559.

This term, "law of the land," does not mean merely an act of the general assembly. If it did, every restriction upon the legislative authority would be at once abrogated.    *    *    *    *

"In reference to the infliction of punishment and divesting the rights of property, it has been repeatedly held in this State, and it is believed in every other of the Union, that there are limitations upon the legislative power, notwithstanding these words, and that the clause itself means that such legislative acts as profess in themselves directly to punish persons, or to deprive the citizen of his property without trial before the judicial tribunals, and a decision upon the matter of right, as *determined* by the laws under which it vested, according to the *course, mode,* and *usages* of the *common law as derived from our forefathers,* are not effectually the law of the land for those purposes." Hake vs. Hersau, 4 Dev., 15.

"The clause meant that the statute which deprives a citizen of the rights of person and property without a regular trial according to the course and usage of the common law, would not be the law of the land in the sense of the Constitution." (People v. Zoynhel, 2 Parker, Cr. C., 343.)

Lord Coke says that the words, "by the law of the land," mean

by the course and process of law by indictment or presentment of good and lawful men, where such deeds be done in due manner or by original writ of the common law."

"Everything which passes under the form of enactment is not, therefore, to be considered the law of the land. If this were so, acts of attainder, bills of pains and penalties, acts of confiscation, acts reversing judgments, and acts directly transferring one man's estate to another, legislative judgments, decrees and forfeitures, in all possible forms, would be the law of the land. Such a strange construction would render constitutional provisons of the highest importance completely inoperative and void. It would tend directly to establish the union of all powers in the legislature. There would be no general permanent law for courts to administer, or men to live under. The administration of justice would be an empty form, an idle ceremony. Judges would sit to execute legislative judgments and de crees, not to declare the law or administer the justice of the country." (Works of Webster, vol. 5, p. 487.)

Thus it appears that "the law of the land" has ever been held to mean more than mere statuatory provisions, such as the sixth sub-divission of article 714 of the Code of Criminal Procedure.

But we are not forced to the necessity of searching the reports of the other States to ascertain that a statutory provision to try a party for a crime on an indictment which fails to charge the offense, or authorize the omission of any material allegation, is not "the law of the land" in the sense in which the term is used in our Constitution.

In Hewitt vs. State (25 Texas, 725), Roberts, J., says: "We do not think that the legislature can condemn a particular act as an indictable offense, and then empower the court, in the prosecution of a party for the commission of *that act* thus condemned, to substitute in the indictment and proof of it a different act, which is not the same, and is not itself prohibited by law. No citizen of this State shall be deprived of life, liberty, property, or privilege, outlawed or exiled, or in any other manner disfranchised, except by due course of the law of the land." (Bill of rights.)

"The spirit of this provision in our bill of rights would seem to apply to this case with great force. It is addressed to and controls the judiciary as well as the legislature. A citizen is deprived of his property by fine, or of his liberty by imprisonment in default of being able to pay the fine, upon a criminal prosecution in which he

is charged with a particular act, which is itself not prohibited as penal, and he is found guilty for an omission of duty in reference to that act which is not charged or proved against him. His conviction can hardly be said to have been by due course of law."

Does not the sixth subdivision of article 714 of the Code of Criminal Procedure provide, as understood by my brethren, for the trial and conviction of a party for a crime upon an indictment, which not only omits one, but every one, of the facts necessary to constitute the offense? Indeed, this is a much stronger case of conviction without due course of the law of the land than Hewitt's was.

But in Hewitt's case Justice Roberts further says: "For when an act is made the subject of a criminal charge, the constitutional provision requiring an indictment or information is at once brought into active force in favor of those who are accused of and prosecuted for said act, and if an indictment be preferred it must be such an one as the framers of the Constitution contemplated. Such an indictment then becomes one of the steps in the prosecution in the due process of the law."

In Williams v. the State (15 Ala., 260), the judgment was based on two statutory provisions:

1. "Every person who shall inveigle, steal, carry or entice away such slave, with a view to convert such slave to his own use, or the use of any other person, or to enable such slave to reach some State or country where such slave may enjoy freedom, such person shall, on conviction, be punished by imprisonment in the penitentiary not less than ten years."

2. "Every person who shall fraudulently or feloniously steal the property of another in any other State or country and shall bring the same within this State, may be convicted and punished in the same manner as if such larceny had been committed in this State, and in every such case such larceny may be charged to have been committed in any county in or through which such stolen property may have been brought."

The indictment charged "that James Williams, late of said county, etc., in the county aforesaid, one slave named Albert, of the value of five hundred dollars, of the goods and chattels of John P. Taggart, then and there being found feloniously, did steal, take and lead away," etc.

On the trial it was proved that the slave was taken from the possession of the owner, in Hardeman county, Tennessee, and was

afterwards found in the possession of the prisoner in Fayette county, Alabama, where the indictment was presented.

The prisoner asked a charge that evidence of the taking in Tennessee, and the property being found in his possession in Fayette county, Alabama, would not authorize a conviction on the indictment, which was refused; and he was convicted and sentenced to ten years confinement in in the penitentiary.

A motion in arrest of judgment, on grounds apparent upon the face of the indictment, was made and overruled.

In the opinion of the Supreme Court, reversing the judgment, Collier, C. J., says: "It is abundantly shown by the cases cited that an indictment founded upon that section (the first above), should substantially, and with *particularity*, allege the existence of such a state of facts as constitute the offense. Though proof of them would establish a larceny at common law, it is not sufficient for the indictment to charge that offense in the general terms which are sanctioned by precedent. The statute must be followed, and *quo animo*, the act was committed, must be specially stated."

So, in prosecutions for embezzlement under our code, the indictment must allege the existence of such a state of facts as constitute that offense, and though it is subject to the same penalty as theft, it is not sufficient for the indictment to charge the latter in its ordinary terms, according to precedent.

The statute defining embezzlement must be followed, and the acts and intents constituting the offense must be specially stated.

Again, Judge Collier, in the same case says: "We have seen that, if the offense had been committed here, the indictment must, in its allegations, have conformed to the statute, and that the prisoner could not have been convicted upon a charge of larceny in general terms."

Then, it is plain he did not assent to the proposition that the latter part of the section, relating to the offense committed by bringing the stolen property into the State, could relieve the prosecution from pursuing the particular statute on which the indictment is based, and stating all the facts and circumstances necessary to bring the accused precisely within such statute. And it is certain that no such departure from established usage can be "due course of the law of the land." Yet the departure in the case in hand is much greater, and cannot for a moment be deemed legal, unless it is admitted that the legislature can make any and everything "due course of law."

Judge Curtis, of the Supreme Court of the United States, in Den v. Murry et al (18 How., 272), says: "Due course of law generally implies and includes *actor, reus, judex,* regular allegations, opportunity to answer, and trial according to some settled course of judicial proceedings."

. "No person can be made to suffer for a criminal offense, unless the penalty be inflicted by due process of law."    *    *    * "It ordinarily implies and includes a complaint, a defendant and a judge, *regular allegations,* opportunity to answer and a trial according to some settled course of judicial proceedings." (Hunter vs. Reily, 53 Penn., 117.)

In Texas, the State's complaint is the indictment or information, "accusing the person therein named, of some act or omission which, by law, is declared to be an offense;" the defendant is the person so accused; the judge is the court having jurisdiction to try the particular offense; the regular allegations are such as set it forth in plain and intelligible words, "by a statement of" all such facts and circumstances as constitute the particular statute offense for which he is liable to suffer, "so as to bring the party indicted precisely within the provisions of the statute;" the opportunity to answer is to plead to the particular case made by the averments, and no other, and the trial is of the one issue between the State and the accused, made by such allegations and plea, governed by some settled rules of judicial proceedings, *"according to the course, mode, and usages of the common law."*

Whenever the penalty of the law prescribed for any crime is inflicted upon a person in this State, without compliance with any one of these requirements, the punishment is not "by the cue course of the law of the land." No other mode of proceeding to conviction and punishment can possibly be by "due process of the law of the land." .

In Twitchell vs. the Commonwealth, where the indictment was under the Pennsylvania statute, providing that it should be sufficient, in indictments for murder, "to charge that the defendant did feloniously, wilfully, and of malice aforethought, kill and murder the deceased," on application for a writ of error to the Supreme Court of Pennsylvania before the Supreme Court of the United States, on the ground that a conviction of murder upon such indictment was not by due process of law, but was repugnant to the fifth and sixth amendments of the Constitution of the United

2A

States, the Chief Justice said: "We are by no means prepared to say that if it were an open question whether the fifth and sixth amendments of the Constitution apply to the State governments, it would not be our duty to allow the writ applied for, and hear argument on the question of repugnancy. We think, indeed, it would. But the scope and application of these amendments are no longer subjects of discussion here." (7 Wall, 325.)

From this language it is plain that the Supreme Court did not deem such indictment a step in "due process of the law of the land;" and the ruling in Pennayes vs. Neff (95 United States, 714), applies this term, as expressed in the fourteenth amendment, as a restriction upon the State governments. So now it is beyond the power of any State in this Union to "deprive any person of life, liberty or property without due process of law."

Though the common sense forms, so called, have in part been sustained in Alabama, it is understood that not one of them, which omits any *statement or word required to make out every material ingredient in the description of the offense charged,* has been sustained. (45 Ala., 88.) "And when the subject matter of the indictment cannot be brought within the meaning of the statute without the aid of extrinsic evidence, it is necessary, besides charging the offense in the words of the statute, to aver such facts and circumstances as may be necessary to bring the matter within the meaning of it, so as to characterize the crime alleged and make it judicially appear, in order that the accused may be informed of the true '*nature* and *cause* of the accusation against him.' " (The State vs. West, 10 Texas, 555; Jesse vs. State, 28 Miss., 109, 110, and cases in 24 and 42 Miss. *supra*; Gray vs. State, 7 App., 18; Id., 189; Mete vs. State, 3 App. 605.)

Any statutory form of indictment in this State, which does not contain these requisites, is insufficient, and the writer would not be understood to approve any such.

It is believed the authorities and sound reasoning fully warrant the following conclusions:

1. That the constitutional "right to demand the *nature* and *cause* of the accusation against him," guarantees to the accused, that the indictment or information shall state every fact and circumstance necessary to a certain, specific and complete description of the particular offense, so as to characterize it, and make it judicially appear upon the record of the cause.

2. That a person tried for a crime, not so set forth and described in the indictment in the case, no matter how fully it may

describe any other, is not held to answer for the particular criminal offense, " on indictment of a grand jury," as contemplated by the bill of rights.

3.  That a conviction for a crime, not so made to appear upon the record by the indictment, is not "by the due course of the law of the land."

4.  That these constitutional provisions are addressed to and control the judiciary as well as the legislature, and require this court to reverse a judgment based on a violation of either of them, whenever properly brought before it on appeal, in order that the citizen may not "be deprived of life, liberty, or property without due process of the law of the land."

5.  That the controlling power of these provisions cannot be removed, contracted, nor limited by any legislative enactment, but must remain complete as part of the supreme law of the land, in favor of any person accused of crime, in this State, until the State in convention, by the use of its original sovereign powers—after the United States shall have removed the binding effect of the fourteenth amendment of the Constitution of the United States from the States—remove the three provisions from its Constitution.

Finally, to allow the indictment for a greater to sustain a conviction for the lesser offense, it must contain the statement of every inculpatory fact and circumstance material to the description of the latter, and the two must be alike as to all the essential constituent elements of the lesser offense, so that the allegation will include it, without contradicting the material averments of the greater. Whenever an indispensable constituent fact or circumstance of the lesser is not included in the greater, the latter cannot be made to include the former, no matter how many other facts and circumstances may be common to both.

In other words, the *veræ causæ* of both must be identical to the whole extent of the lesser offense, therefore the offense charged, and that for which the defendant is convicted, must be the same to the whole extent of the latter, for it is a familiar rule of the law that facts proved when not averred cannot constitute the basis of a judgment. Indeed, we should, in every criminal case, strike from the indictment every fact not proved, and render the verdict and judgment in accordance with those remaining as proved, if in law they constitute an act or omission declared by law to be an offense. Then the allegation, verdict and judgment will agree, the first

being the *nature* and *cause*, the second the proof or truth of such act or omission, and the third the conclusion of law arising upon the concurrence of the other two. And when this agreement is found in the record of a cause, then, in that particular, the punishment inflicted may be said to be "by due course of the law of the land."

It does seem certain that the indictment in this case and the verdict and judgment thereon would require much skill in false reasoning to consider them together without concluding in a *reductio ad absurdum*. And as the law reasons logically, rejecting superfluous, contradictory and incongruous things, when its solemn proceedings are made objects of ridicule by its officers or legislative enactment, the citizen should be protected by the court.

As the record in this case does not contain any allegation or show where the defendant ever made any answer to a charge of embezzlement, was it due process of law to proceed to judgment, convicting him for that crime before it was involved in an issue between the State and the defendant? If so, the constitutional guarantees are indeed but empty forms, idle ceremonies, and one by one the most sacred rights of freemen might all be removed and the very ends for which society was organized thwarted. If the legislature can provide for the conviction of a citizen without any charge informing him of the *nature* and *cause* of the prosecution against him in one, it can in every case, and if it can do so indirectly, it can do so directly. Affirm its right to do this, and each popular excitement may add another instance of innovation until no man will be safe in the enjoyment of life, liberty or property.

We would soon be in a condition to know as little of the *nature* and *cause* of our being restrained in our liberties and confined in a dungeon as did the victims of inquisition, and to be brought before a court for trial and liable to be convicted for any crime of which malice or popular excitement should, at the moment, offer the slightest *prima facie* evidence, without being allowed to get any evidence, however much might exist, to rebut, contradict, or explain and exculpate. Such, indeed, is the inevitable conclusion arising from the record in this case, for it is impossible to conceive how the defendant, when brought before the court to answer the allegation of theft, and upon his plea thereto of "not guilty," could be expected to have his testimony ready to show that he had disposed of the property in accordance with the terms of a trust, to prove

that, in fact, there never was any trust or duty in the particular matter, or to establish the fact that he never appropriated any such property to his own use. Yet, had he, by intuition, conceived a possibility of his being met by proof tending to show embezzlement, and prepared to meet such emergency, still, under the law, if it be a law, he was liable to be surprised by the introduction of proof tending to show that he obtained the goods or property under false pretence, or had received them knowing them to be stolen.

All this, and more may be expected, when such laws are affirmed to be the "law of the land," for, in a science like the law, which reasons logically, the introduction of one erroneous principle admits every other possibly deducible therefrom; and, if we introduce the rule that the legislature can make any and everything law, binding upon the courts of the country, it will be impossible to imagine the infinity of wrongs that may follow, and evils that may flow from it.

Taking this view of the law, the writer deems it his duty to enter a solemn protest against the establishment of a precedent which, if followed, must, in his opinion, sweep away some of the most important safeguards of the Constitution; and were he to fail to perform this duty, he would feel that he had not properly redeemed the trust imposed upon him, and that he had failed to tread the path of the learned judges who have in former days upheld these constitutional guarantees, making them sure and steadfast to every American citizen.