## JACOB R. FUNCHESS et al. *v.* JOHN H. SEIBE et ux.

F. executed his last will and testament, which contained the following clause in substance, whereby he gave to his wife absolutely one third part of all his personal estate and two hundred acres of land to be taken off his lands in South Carolina, the land to be held by his wife, with remainder to his children. The third clause is in these words: "I order that my negroes, after the above-mentioned third are taken off, shall be equally divided among my children, though it is my wish that my property shall not be divided while my wife remains a widow, or until one of my children becomes of age or marries, then it shall be divided without a sale of any of my negroes, so that the child who becomes of age or marries may get his or her part, and then the balance shall remain undivided until another of my children becomes of age or marries, then to be divided equally again, so that he or she may get their part, and so on in succession, until each of my children may get his or her part when they become of age or marry; though it is my wish when my negroes are divided, that the lot that Bordeau may be in shall not be drawn for while my wife remains a widow, or until my youngest child becomes of age or marries; it is my wish that my lands in South Carolina, after the two hundred acres are laid off before mentioned, be equally divided among my children when my first child becomes of age or marries, and their part appointed to them of said land; and if any of my children shall die without issue, the property shall return to my surviving children. My lands on Leaf River shall not be divided while my wife remains a widow, but shall be kept together for the good of my wife and children, though if my wife should marry, it is my will that it shall be equally divided between her and my children; if my wife does not return to South Carolina to live, then I order that my lands in South Carolina be sold, and one third of the money arising from the sale of said lands I give to my wife, and the balance of the money shall be equally divided among my children; my horses, wagons, and plantation tools shall be kept together for the good and support of my wife and children:"— *Held,* that the words "the property," in this clause of the will, embrace and relate only to the landed estate in South Carolina just before mentioned, and any other meaning given to them would be irreconcilable with the disposition of his property generally as intended by the testator.

The will gives the testator's children an absolute estate in the slaves, and upon the allotment to Mrs. W. of her share of them, they became the property of the husband.

ON appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

The opinion of the court contains the facts of the case.

Mr. Justice HANDY delivered the opinion of the court.

The appellees filed their bill in the superior court of chancery, to recover certain negro slaves and their hire, alleged to be the property of the complainant's wife, under the will of her father, Jacob Funchess, deceased. They allege that the testator bequeathed the slaves to his children, with a provision that in case of the death of any of them without issue, their shares provided for in the will should go to the survivors; that the several shares were allotted to the children, six in number, respectively, including Mrs. Woodward, who was one of them, and whose share was set apart in the year 1836; that Thomas A. Woodward, her husband, made an absolute sale of the slaves to the appellant in the year 1841; that Mrs. Woodward died in the year 1843 without issue, and that Mrs. Seibe is the only surviving child of the testator, except the appellant, and entitled to one half of the slaves.

The provisions of the will are in substance as follows.

By the second clause, he gives to his wife, absolutely, one third part of all his personal estate, and two hundred acres of land, to be taken off his lands in South Carolina; the land to be held by her for life, with remainder to his children.

The third clause is in these words. "I order that my negroes, after the above-mentioned third are taken off, shall be equally divided among my children," naming them, "though it is my wish that my property shall not be divided while my wife remains a widow, or until one of my children becomes of age or marries, then it shall be divided without a sale of any of my negroes, so that the child who has become of age or marries may get his or her part, and then the balance shall remain undivided until another of my children becomes of age or marries, then to be divided equally again, so that he or she may get their part, and so on in succession until each of my

children may get his or her part when they become of age or marry, though it is my wish, when my negroes are divided, that the lot that Bordeau may be in shall not be drawn for while my wife remains a widow, or until my youngest child becomes of age or marries; it is my wish that my lands in South Carolina, after the two hundred acres are laid off before mentioned, be equally divided among my children when my first child becomes of age or marries, and their part appointed to them of said lands; and if any of my children should die without issue, the property shall return to my surviving children. My lands on Leaf river shall not be divided while my wife remains a widow, but shall be kept together for the good of my wife and children, though if my wife should marry, it is my will that it shall then be equally divided between her and my children; if my wife does not return to South Carolina to live, then I order that my lands in South Carolina be sold, and one third of the money arising from the sale of said lands I give to my wife, and the balance of the money shall be equally divided among my children; my horses and wagons and plantation tools shall be kept together for the good and support of my wife and children."

The appellants demurred to the bill, on the ground, 1st, that Mrs. Woodward took an absolute estate to the slaves under the will, which became vested in her husband by marriage; 2d, the bar of lapse of time, and the statute of limitations. This demurrer was overruled, and this appeal taken.

The controversy here depends upon the construction of the words, "and if any of my children should die without issue, the property shall return to my surviving children," contained in the third clause of this will. This bill is based upon the construction that the words "the property," in this clause, relate to and embrace the whole property of the testator, bequeathed to his children; while, on the other hand, the appellants contend that they refer only to the lands in South Carolina, just before mentioned. We think the latter the proper construction, for the following reasons.

First. By the second clause of the will, one third of the en-

tire personal estate of the testator is bequeathed absolutely to his wife; and by the third clause, he directs that his slaves, after his wife's third shall be taken off, shall be equally divided among his children, who are to get their parts as they respectively become of age or marry. If the construction contended for in behalf of the appellees be correct, it would either be. repugnant to the second clause giving one third of his personal estate to his wife absolutely, or the bequest to his children would pass a different estate and a less interest than is left to the wife; to the children, a mere life-estate in the share to which each of them should be entitled, unless the child should have issue, and on failure thereof, with remainder to the survivors; but to the wife, an estate of absolute property. The provision in favor of his wife is clear by its express terms; and it is not to be inferred, from the doubtful language of the third clause, that he intended his children to take a less estate than was given to his wife. Such a disposition would naturally tend much to the disparagement of his children in their advancement in life, by depriving them of the right of disposing of the property allotted to them, and of otherwise enjoying the full benefit of it; and it is not to be supposed that so unjust a discrimination was intended against them.

Secondly. The whole context and terms of the will, and particularly of the third clause, show that the expression, "the property," refers to the lands in South Carolina. The first part of this clause disposes of his slaves to his children in well expressed terms. Wherever he refers to his property generally, he uses the words "my negroes," "my property," "my lands," &c. After having disposed of his negroes in the first part of this clause, he proceeds to make provision as to the South Carolina lands, a distinct matter altogether from the other property mentioned in the clause, and in a manner entirely different from the disposition of his other property just before made, thus: "it is my wish that my lands in South Carolina, after two hundred acres are laid out before mentioned, be equally divided among my children when my first child becomes of age or marries, and their part appointed to them of

said lands," and adds, " and if any of my children should die without issue, the property shall return to my surviving children." Whatever doubt there might be upon grammatical rules as to the meaning of the words, " the property," we think there is none to the plain sense in which they are to be understood. They are employed in immediate connection with the South Carolina lands, after the personal property had been disposed of and dismissed, and when both then and immediately afterwards the testator's mind was directed to the disposition of his lands. He uses terms of limited import, " the property," alluding to what was immediately in his mind, and not general terms, " my property," which he employs elsewhere in the will, where it is clear that he refers to his property generally. In this sense, the language is natural, and such as a plain man, expressing his thoughts in direct terms, would be likely to use; while, under the other construction, it is different from the phraseology employed in other parts of the will, and irreconcilable with the disposition of his property generally, as indicated in the will; and if it was his intention by it to alter that disposition, the part of the will in which he expressed the intention is strange and improbable. It is rather to be supposed, that if he had intended to make so material a modification of all the bequests to his children, he would have done so in the same plain and direct language in which he expresses his intentions in regard to the property bequeathed to his wife and children respectively in the other parts of the will.

Under this view of the subject, we are of opinion that the will gave to the testator's children an absolute estate in the slaves, and, upon the allotment to Mrs. Woodward of her share of them, that they became the property of the husband.

The decree of the chancellor is, therefore, reversed, the demurrer sustained, and the bill dismissed.