## HENRY HUNTSMAN *v.* THE STATE.

1. CONSTITUTIONAL LAW — INDICTMENT.— The constitutional "right to demand the nature and cause of the accusation" guaranties to the accused that the indictment or information shall state every fact and circumstance necessary to a certain, specific and complete description of the particular offense imputed to him, so as to characterize it and to make it judicially appear upon the record of the cause.

2. SAME.— A person tried for a crime not so set forth and described in the indictment, no matter how fully it may describe any other offense, is not held to answer for the crime " on indictment of a grand jury " as contemplated by the Bill of Rights, section 10.

3. SAME.— A conviction for a crime not so made to appear on the record by the indictment is not a conviction " by due course of the law of the land."

4. SAME.—These constitutional guaranties control the judiciary as well as the Legislature, and whenever a judgment based on a violation of either of them is properly before this court on appeal, its reversal is imperative in order that the citizen may " not be deprived of life, liberty or property without due process of law."

5. SAME.— Nor can these provisions of the Constitution of the State be abrogated or restricted by legislative enactment. They must remain intact as part of the supreme law of the land, in favor of any person accused of crime in this State, until they shall be abolished or altered by the sovereignty of the State exercised in conformity with the Constitution of the United States.

6. SAME.— To warrant a conviction for a less offense than that charged in an indictment it is necessary that every constituent fact of the less offense be alleged in the indictment, and that there be no repugnancy between the constituents of the less offense and those of the offense charged. No matter how many facts are common to both offenses, the offense charged does not include the less offense unless it includes every constituent element of the latter.

7. SAME — THEFT — EMBEZZLEMENT — CASE  OVERRULED.— From the foregoing principles it follows that so much of article 714 of the Revised Code of Procedure as purports to make the offense of theft include the incompatible offense of embezzlement is unconstitutional and void, and that a conviction for embezzlement cannot be had upon an indictment for theft. *Whitworth* v. *State*, 11 Texas Ct. App. 414, *contra*, is hereby overruled.

APPEAL from the District Court of Falls.    Tried below before the Hon. J. ABBOTT.

The indictment contains the allegations ordinarily used in charging theft, and accused the appellant of stealing a gelding, the property of Ben Young, on July 30, 1881. The jury found appellant guilty of embezzlement and assessed his punishment at a term of five years in the penitentiary.

It appears by the evidence that Young, the owner of the gelding, lived in Milam county, and there loaned the animal to the defendant, who was his son-in-law, to carry him to Falls county, from whence he was to bring the animal back within three or four days. The defendant, who was a physician, rode the horse into Falls county, and was there arrested and tried on a charge of unlawfully practicing medicine. He employed a lawyer to defend him against that charge, and gave the horse in payment of the lawyer's fee. In a week or two the owner of the animal made his appearance and reclaimed it, and this prosecution for theft was one of the results.

The charge to the jury submitted the law of embezzlement as well as that of theft.

*Martin & Dickinson*, for the appellant: Our last assignment of error raises the question of the constitutionality of art. 714 of the Code of Procedure, which makes it permissible under an indictment for theft to convict for embezzlement.

If this were a case under the civil code we should regard the recent case of *Whitworth* v. *State*, 11 Texas Ct. App. 414, as being decisive of this,— the same question having been passed upon by your honorable body.

But as the principle *stare decisis* can have no very forcible application in criminal jurisprudence, and particularly so in crimes which are *malum in se*, we hope it will not be considered impertinent that we should briefly state to the court our views on this question. Taking as a basis for our remarks the fundamental principle of our system, that persons charged with felonies shall be prosecuted by indictment, and the definition of an indictment as given in our Code Crim. Procedure, art. 421, that it shall allege every fact necessary to be proved, we beg your honor's attention to the statute defining theft. Penal Code, arts. 724–27. The taking to constitute theft must be

wrongful, with a single exception. Embezzlement is a fraudulent conversion after a lawful possession or taking. Mr. Justice Clark has emphatically announced in *Simco v. State*, 8 Texas Ct. App. 406, that these two offenses are essentially variant. And it is not denied as a general proposition that they are separate and distinct offenses; but fraud being an element common to both it is justly said they are of a kindred nature; and our Legislature has enacted, not in defining what shall constitute these two offenses, for they contain conditions essentially variant from each other, but in the remedial part of the law, that theft includes embezzlement. Now in the nature of things we submit this cannot be true, and it is equally so when considered in the light of our Constitution and statutes upon the subject, taken altogether. When tested by moral law embezzlement combines an element of turpitude not common to theft and in addition thereto; for there is not only a fraudulent deprivation of another's property, but the betrayal of a confidence reposed; and it is well said the gist of this offense is a breach of trust.

It could, as defined by the statute, be classed with almost equal propriety as an offense against trade; but not so with theft. The Legislature certainly thought embezzlement not inferior in the degree of its turpitude to theft, since both have the same penalty annexed. There being no degree in natural law and none in their penal consequences between these two crimes, we will look to what we respectfully submit is the only true test of the legal relationship of the two offenses. Are the facts necessary to be proved to constitute embezzlement the same or a part of the same which go to make up the offense of theft? If we apply this query to the offense of murder, where the doctrine of degrees has its peculiar force, we see at once its applicability. Murder contains as essential elements every condition or state of facts constituting an assault, an assault and battery, an aggravated assault and

battery, and manslaughter, with the addition of malice. How is it with theft and embezzlement? The party is charged with theft. He is shown to have taken property by stealth with intent to defraud the owner and to apply the same to his own use. These are the peculiar facts which constitute theft. We submit, do they include the facts which constitute embezzlement and which must be proved before a conviction can be had? Is there any agency shown, any possession by virtue of such agency? Suppose we analyze theft into its constituent parts; as for instance fraudulent taking, intention to appropriate, and intention to deprive the owner, and see if we can take any two of its components and make embezzlement. It is unnecessary to institute a comparison, for it will be conceded that when we would compound facts which would constitute embezzlement, we drop one of the essentials of theft and incorporate a trust relation in its nature essentially variant from the relations of the former case. We prove a part of the crime of theft, and then we prove something in addition, and this must destroy the idea that embezzlement is a degree of theft and included within it. This being the case, we submit an indictment for theft does not inform one prosecuted under it for embezzlement, of the nature and character of the offense he is to answer for, or, in the language of the statute, does not allege the facts necessary to be proved. Such being the case, art. 714 of the Code Crim. Proc. is repugnant to the sections defining theft and to art. 421, Code Crim. Proc., prescribing the requisites of an indictment, as it is also in contravention of the Constitution both of this State and of the United States. If the Code of Procedure should authorize a conviction under an indictment charging one offense clearly defined by law, of another offense also clearly defined by law and essentially variant from the offense charged, we can conceive no objection to the authority of the courts to declare the nullity of that part of the Code.

The Legislature is no less bound to conform their acts to the Constitution, than are the courts to retrench legislative excesses. But it may be argued that the law is to be construed liberally for the advancement of the ends of justice. We respectfully submit that a statute which permits the prosecution under the same indictment of incongruous offenses, as they are defined by the same act, has a tendency doubly evil, without any corresponding good. It must at times result in entrapping the innocent; for example, suppose a man indicted for the theft of a horse, to be innocent and not to be acquainted with the alleged owner; the venue is laid in Falls county; the defendant has had a horse similar to that described in the indictment, and has sold him, and comes prepared to show that at and before the alleged theft he was in Milam county and therefore could not be guilty. The prosecution introduces evidence that some one had loaned the defendant in Milam county a horse such as is described, and alleged to have been stolen. The defendant cannot be surprised, because the statute has informed him that he could be convicted under this indictment of theft, swindling or embezzlement, and he must come prepared to meet a possible case not disclosed by the indictment, but which may be developed by the evidence.

Is this an impossible case? Another evil of such a practice, it encourages a careless preparation on the part of prosecutors, and a tendency to encourage incompetent men to aspire to responsible places, seeing themselves hedged in by legislative protection. But what good result can follow from such a system? Can there be any difficulty in deciding when a given state of facts should be charged as theft and when it should be charged as embezzlement. No attorney of ordinary capacity could make a mistake as to this. We submit this branch of the case to the court.

*H. Chilton,* Assistant Attorney General, for the State.

HURT, J. The appellant was tried on an indictment containing the usual allegations of theft, to wit, that he fraudulently took the property from the possession of the owner without his consent, with the essential intents, etc. He was convicted of embezzlement, which he insists was unconstitutional, and his counsel, in their very able brief and written argument, urge the unconstitutional grounds for a reversal of the judgment.

In *Whitworth* v. *State*, 11 Texas Ct. App. 414, such a conviction was held legal; and this opinion is written to manifest some of the reasons why that case is now over-ruled. In support of the conclusions reached by the majority of the court in that case, it is urged in the opinion written by Judge Winkler that " the statute laws of this State enumerate certain offenses which include offenses of a less degree of culpability than the main offense charged. Thus, it is provided that the offense of murder includes the lesser degree of culpable homicide, and also an assault with intent to commit murder." And upon a similar provision, article 714 of the Code of Criminal Procedure, they base the legality of the judgment against Whitworth.

Let this article of the Code be tried in the crucible of appellant's constitutional safeguards, to ascertain how much actual law is contained in its sixth subdivision, to wit, theft, "which includes swindling, *embezzlement*, and all unlawful acquisitions of personal property punishable by the Penal Code."

The following are among the constitutional guaranties to which every person is entitled in this State, when prosecuted for crime:

1. He shall have the right to demand the *nature* and *cause* of the accusation against him.

2. And no person shall be held to answer for a criminal offense, amounting to felony, unless on indictment of a grand jury. (Bill of Rights, sec. 10.)

3. No citizen of this State shall be deprived of life, liberty, property, or privilege, outlawed, exiled, or in any manner disfranchised, except by due course of the law of the land. *(Id.* sec. 19.)

4. Nor shall any State deprive any person of life, liberty, or property without due course of law. (U. S. Const. amendment 14, sec. 1.)

What is meant by this right to demand the *nature* and *cause* of the accusation? Is it merely the right to have a copy of whatever written charge may have been filed in the court against him? Is it met and satisfied by a pleading which does not state the material elements of the offense for which he is to be tried? Does it permit him to be convicted of embezzlement upon an indictment which does not state a single one of the particular facts or circumstances which would render him guilty of that offense? If not, why not? Because the law has always required "such a certain description of the offense for which he is to be placed in jeopardy, and statement of the facts by which it is constituted, as will fully identify the charge against him, lest the grand jury should find a bill for one offense, and the defendant be put upon his trial for another, without any authority," and without his knowing what crime he is required to answer, or being prepared with his evidence to meet the charge; and in such manner that the record of his conviction or acquittal would insure his subsequent protection against another prosecution on the same ground; and because this right is incompatible with any power of a Legislature to dispense with any material allegations in the indictment, requisite to describe and identify the particular offense with that degree of certainty which will enable the accused and the court to know that the offense for which he is put upon his trial is the *same offense* with that for which he stands indicted, in order that he may plead in bar a previous conviction, or acquittal.

The Supreme Court of Mississippi says: "An indictment which does not contain this degree of certainty does not communicate to the accused the *nature* and *cause* of the accusation against him in the manner contemplated and designed by the Bill of Rights; nor has the·Legislature the power to dispense with such a degree of certainty in indictments." *(Murphy* v. *State,* 24 Miss. 594.)

In *Williams* v. *State,* 42 Miss. 328, Peyton, J., says: "It is necessary to specify on the face of the indictment the criminal nature and degree of the offense, which are conclusions of law from the facts, and also the particular *facts* and *circumstances* which render the defendant guilty of that offense, for the following reasons:— [Italics ours.]

1. "In order to identify the charge, lest the grand jury should find a bill for one offense, and the defendant be put upon trial for another, without any authority.

2. "The defendant's conviction or acquittal may inure to his subsequent protection should he be again questioned on the same grounds; the offense, therefore, should be defined by such circumstances as will in such case enable him to plead a previous conviction or acquittal of the *same offense.*

3. "To warrant the court in granting or refusing a particular right or indulgence, which the defendant might claim as incident to the nature of the case.

4. "To enable the defendant to prepare for his defense in the *particular case,* or, if he prefers it, to submit to the court by demurrer whether the facts alleged (supposing them to be true) so support the conclusions in law as to render it necessary for him to make any answer to the charge.

5. "Finally, to enable the court, looking at the record after conviction, to decide whether the facts charged are sufficient to support a conviction of the *particular crimes,* and to warrant their judgment."

The constitutional right guaranties this degree of cer-

tainty in every indictment *(Murphy* v. *State,* 24 Miss. 594), and the accused cannot waive it. (Newcomb's case, 4 George, Miss. 383.)

In the case in hand the *particular* offense charged in the indictment is theft, and the material elements of the charge, as specified, are:

1. Fraudulently taking from the possession of the owner without his consent.

2. Intent on part of the accused to deprive the owner of the value thereof.

3. And intent to appropriate the same to his own use.

Does either of these three constitute an essential ingredient in the statutory definition of embezzlement? Would embezzlement be the conclusion of law so supported by them as to render it necessary for the accused to make any answer to the charge? Would a copy of them so inform the accused of the *nature* and *cause* of a charge of embezzlement, as to enable him to prepare for his defense against it? Would they warrant the court in granting him the right to disprove the existence of any trust, agency or bailment, or to prove that the trust was executed according to its terms? Would they be sufficient to warrant the court, looking to them, and the plea of not guilty alone, in allowing him to introduce proof to negative the fact of there ever having been any breach of trust on his part, or any appropriation of the property to his own use? Would they not be as much calculated to admit proof on part of the accused that he did not murder, rob or rape the owner of the property, as to warrant any of these? Do they constitute such a clear, specific and precise statement of all the facts and circumstances of embezzlement as would fully identify the *particular* crime for which appellant was convicted? Would they be sufficient to support a plea of former conviction against an indictment charging embezzlement in the

words of the statutes? What are the facts constituting embezzlement? Let the opinions of this court answer.

Clark, J., in *Webb* v. *State*, 8 Texas Ct. App. 311, says: "In order to sustain a prosecution for embezzlement against an agent of a private person or corporation, four distinct propositions of fact must be established in evidence beyond a reasonable doubt. These are as follows:

1. "That the defendant was the agent of the person or corporation as alleged, and by the terms of his employment was charged with the duty of receiving the money of his principal.

2. "That he did so receive money belonging to his principal.

3. "That he received it in the course of his employment.

4. "That he embezzled, misapplied or converted it to his own use. *Leonard* v. *State*, 7 Texas Ct. App. 417; *Ex Parte Hadley*, 31 Cal. 108."

White, P. J., in *Gaddy* v. *State*, 8 Texas Ct. App. 128, says: "The indictment is defective in that it does not allege by direct averments that at the time of the conversion the animal was in the possession of the defendant by virtue of his agency, or of the bailment. An indictment upon a statute must state all such facts and circumstances as constitute the *statute* offense so as to bring the party indicted precisely within the provisions of the statute. The facts and circumstances which are necessary to constitute a *complete* offense, must be stated with distinctness and certainty. An indictment for this offense was held bad by our Supreme Court in *State* v. *Johnson*, 21 Texas, 775, because it did not distinctly state that the defendant had the possession or care of the money by virtue of his clerkship when he converted it to his own use. Such allegation is required by all the standard precedents."

And in *Baker* v. *State*, 6 Texas Ct. App. 347, he says: "Because the charge of the court permitted the jury to

find the defendant guilty upon a state of case other than that as made in the indictment, . . . the judgment as rendered below is reversed and the cause remanded."

In *State* v. *Johnson*, 21 Texas, 775, Roberts, J., says: "It is the breach of trust that constitutes the gist of the offense; unless a duty or trust has been imposed, there can be no breach of trust."

What one of these requisites is contained in the indictment in the case in hand? It is not averred that the defendant received money or property belonging to his principal. No agency, employment, trust, nor breach of trust is alleged. Nothing is charged to have been embezzled by appellant. Then how can it be admitted that this indictment contained a statement of "all such facts and circumstances as constitute the statute offense" of embezzlement, so as to bring the appellant "precisely within the provisions of the statute?" If a failure to allege "that at the time of conversion" the property embezzled "was in the possession of the defendant by virtue of his agency, or of the bailment," rendered an indictment bad, and required this court to reverse the judgment based on it, how has it transpired that an indictment stating none of the constituent elements of embezzlement, as it is defined by statute, is sufficient in law to support a judgment of conviction for that offense? Was not the state of case on which the jury were allowed to find the defendant guilty in this case, "other than that as made in the indictment?" And is not this a conviction for a crime, the very *gist* of which is omitted in the indictment?

The opinion in Whitworth's case seems to rest upon the position that all this certainty of statement of "all such facts and circumstances as constitute the statute offense, so as to bring the party indicted *precisely* within the provisions of the statute," was required aforetime, simply because there was not then a statute providing for the conviction of the accused for an offense not charged in the indictment, and of the *nature* and *cause* of which

he had not been informed; *but that it is so nominated in the statute now.*

Have we not already seen that the Legislature has no power under the Constitution to so nominate by statute? Does not the constitutional right to "demand the *nature* and *cause* of the accusation" forbid its being so nominated?

In *State* v. *Duke* (42 Texas, 461), Gould, J., says: "But being essential parts of the description of the offense, a statute authorizing their omission would be in violation of the constitutional right to be exempt from answering any criminal charge but on indictment or information, and of the guaranty that no citizen of this State shall be deprived of "life, liberty, property, privilege, outlawed, exiled or in any manner disfranchised, except by due course of the law of the land,"—and he cites in support of this position the following authorities: *Hewett* v. *State*, 25 Texas, 722; *State* v. *Leonard*, 47 Me. 426; *Murphy* v. *State*, 24 Miss. 390; 26 Miss. 637; *Norris* v. *State*, 33 Miss. 373; *Niles* v. *State*, 24 Ala. 672.

After this opinion construing two of the constitutional guaranties and reaffirming the cases construing the "right to demand the *nature* and *cause* of the accusation," the constitutional convention readopted two of the clauses and adopted the other; which must be taken as a sovereign adoption of the construction so placed upon them.

In *Bryan* v. *State*, 45 Ala. 86, Peck, C. J., says: "To hold that these or other words used in the statute as descriptive of the offense may be omitted in the indictment, because they are not in the form given in the appendix, will be to set up the form above the statute. This should not be done. Therefore, an indictment that strictly pursues the form will be insufficient if the form is defective in matter of substance. This opinion is not in conflict with any of the cases heretofore decided by this court, in

which it is held that an indictment in the form given in the appendix of the Code is sufficient, because, in *none* of these cases does the form used omit any *statement, or word required to make out every material ingredient in the description of the offense charged.*"

In *Foster* v. *State*, 39 Ala. 233, which was a prosecution upon an indictment charging larceny from a storehouse, and in a second count for receiving stolen goods, and to the entire indictment a plea of *autrefois acquit* interposed, Walker, C. J., says: "An acquittal from the charge of larceny cannot bar a prosecution for receiving stolen goods. This is ascertained by applying the *established test whether the facts alleged in the indictment for the latter offense, if proved true, would have warranted a* conviction on the first indictment. The *constituents* of the two offenses of larceny and receiving stolen goods are altogether different. In the former offense, the accused is guilty of the felonious taking and carrying away of the goods of another. In the latter, he is guilty of receiving goods which had been taken and carried away by another. Under an indictment for the former there can be no conviction, if the evidence proves guilt of the latter. . . . The offense of larceny is perfected before that of receiving stolen goods can be perpetrated. The case in hand cannot therefore fall within the principle which declares that an acquittal of one felony is a discharge of any other offense that is an ingredient or accompaniment of it."

Is it not equally certain that the *constituents* of theft and embezzlement "are altogether different?" In the former the accused is guilty of fraudulently taking the goods of another from the possession of the owner with certain intents. In the latter he is guilty of fraudulently appropriating goods or money he has lawfully received in trust, thereby committing a breach of trust. And with equal force of reason it may be said that "under an

indictment for the former there can be no conviction if the evidence proves guilt of the latter." The one is committed in the taking of possession of the property, and is perfected as soon as that is so acquired; but possession must be lawfully obtained under the solemn engagement of a trust or honest duty, before the other can be committed. In either, the state of case is such as to exclude the possibility of the other.

"The object of the indictment being to give the accused reasonable notice of the cause for which he is called upon to make his answer, in order that he may prepare for his defense, and that by its averments he may be protected against a second trial for the same offense, neither of these is approached by specifications which need not be proved to establish the defendant's guilt of the *particular crime* for which he is convicted." (2 Cooley's Crim. Law, 149.)

Mr. Bishop says that "where offenses are included within one another, a party indicted for any one of them may be convicted of any lower one, unless, as does not often happen, the allegation is in a form which does not properly charge the lower; while, *of course*, if it is in such form, *the want of allegation will be fatal to any verdict found for the lower.*" (1 Bish. Criminal Law, sec. 807, 4th ed.) "Whatever the offense alleged, any other offense may be shown to have been committed, and the indictment will be sufficient, *provided the offense proved is included also within the words of the allegation.*" ( *Id.* sec. 809.)

Again, after treating of 'various offenses embracing lower ones, the same author says: "The law condemns no one until *the matter has been duly charged* against him. Therefore, as already mentioned, none of the foregoing doctrines apply where the thing proved is not sufficiently embraced within the allegation." ( *Id.* sec. 813.)

In the present case the offense proved is not even indi-

cated by the allegation, the words of which exclude the possibility of its being included; nor is a single specification contained in the charge in the indictment required to be proved to establish embezzlement. So, by every known rule of pleading and proof, this conviction was without any indictment or written charge whatever, as to the crime of which appellant was convicted.

This right of the accused to demand the *nature* and *cause* of the accusation against him," as contained in the fourth amendment of the Constitution of the United States, has been construed by the Supreme Court of the United States to much the same effect as the construction placed upon it by the State courts.

In *United States* v. *Mills*, 7 Pet. 142, it was construed to mean that the indictment *must* set forth the offense "with clearness and all necessary certainty, to apprise the accused of the crime with which he stands charged;" and in *United States* v. *Cook*, 17 Wall. 174, to require that "every ingredient of which the offense is composed must be accurately and clearly alleged."

In *United States* v. *Cruikshank et al.* 92 United States, 558, the same doctrine, to the full extent of that laid down in the Mississippi cases, *supra,* is reaffirmed; and, in the opinion, Chief Justice Waite further says: "In Maine it is an offense for two or more to conspire with the intent, unlawfully and wickedly, to commit any crime punishable by imprisonment in the State prison; but we think it will hardly be claimed that an indictment would be good under this statute, which charges the object of the conspiracy to have been wilfully and wickedly to commit, *each, every, all and singular* the crimes punishable by imprisonment in the State prison. All crimes are not so punishable. Whether a particular crime be such a one or not, is a question of law. The accused has, therefore, the right to have a specification of the charge against him in this respect, in order that

he may decide whether he should present his defense by motion to quash, demurrer, or plea; and the court, that it may determine whether the facts will sustain the indictment. . . . Therefore, the indictment should state the particulars, to inform the court, as well as the accused. It must be made to appear—that is to say, appear from the indictment, without going further—that the acts charged will, if proved, support a conviction of the offense alleged."

The court and the accused are not to look further than the face of the indictment for the specification of the offense of which the latter can be convicted. They are not to consider each, every, all and singular the offenses described in the Penal Code, nor are they required to search the Code of Criminal Procedure to ascertain just how many incompatible crimes, the acts constituting which are not made to appear from the indictment, may be proved against the accused on the trial. They are relieved from this by the constitutional right of the "accused" to demand *the nature and cause of the accusation against him,* and such was the universal construction given it when Texas placed it in her Constitution.

It is not, therefore, within the scope of legislative authority, under our Constitution, to provide for the conviction of the accused for a crime which is not embraced within the allegations of the indictment on which he is tried; and it makes no difference what form the legislation for such purposes may assume, it must be void.

The sixth subdivision of article 714 of the Code of Criminal Procedure then, viewed in the light of the Constitution and tested by the safeguard it guaranties to appellant, contains no *actual law* affecting this cause.

In this State "no person shall be held to answer for a criminal offense unless on indictment of a grand jury," etc., and, after what has already been said, it will not require a very great amount of investigation to ascertain

whether this requirement was complied with in the present case.

· What is meant by the word "indictment" as used in this clause of the Constitution? How are we to ascertain its meaning? Does it mean anything which may in the future be provided by statute? Or does it mean precisely what was understood by the term "*indictment of a grand jury*" in the country and in the judicial and legislative parlance at the time the Constitution was adopted? That the affirmative of the latter question is true needs no authority, at this late day, to satisfy the legal mind.

Then what is the meaning of the term in the language of Texas and her Legislature and judiciary?

· By the Code of Criminal Procedure in force when the last Constitution was adopted, "An indictment is the written statement of a grand jury, accusing a person, therein named, of some act or omission which, by law, is declared to be an offense." (Art. 394.) It required the offense to be "set forth in plain and intelligible words" (art. 395), and "with such certainty as will enable the accused to plead the judgment that may be given upon it, in bar of any prosecution for the same offense." (Art. 398.)

Justice Roberts, in *Hewitt* v. *State*, 25 Texas, 725, speaking of the language of article 394, says: "At the adoption of our Constitution, and for a century previously, both in England and America, this is what was understood as constituting an indictment."

· In *State* v. *McCormick*, 22 Texas, 301, it was held to require a statement of everything which it is necessary to prove; this was repeatedly reaffirmed by our Supreme Court. *Alexander* v. *State*, 29 Texas, 495.

Then in the legislative and judicial parlance of the State, it meant, "The written statement of a grand jury accusing a person, therein named, of some act or omis-

sion, which, in law, is declared to be an offense, setting it forth in plain and intelligible words, and stating everything which it is necessary to prove with such certainty as will enable the accused to plead the judgment that may be given upon it, in bar of any prosecution for the same offense;" and this much, at least, was meant by the term in the Constitution.

The Constitution did not stop to define this term. They used it as a term well defined and understood. They meant just what it was then understood to be with all of its incidents.

Can the Legislature remove any of these incidents ? If so, which, and how many ? If it can authorize the omission of one, why not two, three, four, or all of them ? If it can provide for the omission of a single necessary ingredient in the description of the offense charged, it can authorize the omission of all words descriptive of the act or omission, which, by law, is declared to be an offense. Thus it might provide for a trial of a citizen upon a written statement of a grand jury accusing him of having violated the law, and authorize the prosecution to prove, on the trial, any act or omission violative of any provision of the written law. But it was for the purpose of preventing such unjust and tyrannical legislation and its consequences, that the requirement of "an indictment of a grand jury " was inserted in the Constitution.

Were it otherwise, the grand jury might indict for theft upon a state of case sufficient, as presented to them, to warrant the charge, and on trial the defendant show his innocence of such offense, yet the prosecution could abandon that accusation and go on trying to establish embezzlement, swindling, receiving stolen goods knowing them to be stolen, obtaining property upon false pretenses, and, if in relation to live animals, driving them beyond their accustomed range; taking the chances of making a *prima facie* case of either or all of them, and

so procure a conviction for an offense which the grand jury never heard of during their investigation, and for which they had no thought of indicting the accused. Thus the indictment presented would be made the mere stalk or stub on which the prosecution might seem least liable to be met, or, of which there might be the greatest probability of the defendant's having no information, so as to insure his conviction before he could prepare to answer. Such a construction would make the right not to be "held to answer for any criminal offense except upon indictment of a grand jury" a deception, a fraud, a falsehood, to entrap innocent persons who confide in the truth of the law and its solemn proceedings, and to wrongfully convict them without any indictment of a grand jury charging them with the crime for which they are held to answer.

There must be such an indictment, so accusing the defendant of the *very crime* of which he is convicted, to sustain the judgment, and the want of it will not be supplied by one charging another offense by allegations which do not include that for which the party is convicted.

The record of conviction for embezzlement, in the case in hand, contains no indictment even attempting to describe or set forth this offense, and therefore the defendant was held to answer for this criminal offense without indictment therefor, and without any information charging him with the same, in violation of the constitutional provision requiring an indictment or information.

As the judgment in this case may deprive the defendant of both liberty and property, it may well be asked whether it is done "*by due course of the law of the land.*"

A few authorities as to what is meant by the term will serve as a basis for what will here be said in regard to its binding effect on legislative and judicial departments of government.

Mr. Cooley says: "Perhaps no definition is more quoted

than that given by Mr. Webster in the Dartmouth College case: 'By the law of the land is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial.' The meaning is that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society. Everything which passes under the form of an enactment is not, therefore, to be considered the law of the land."

The definition here given is apt and suitable as applicable to judicial proceedings, which cannot be valid unless they proceed upon inquiry, and render judgment only after trial. It is entirely correct, also, in assuming that a legislative enactment is not necessarily the law of the land. The words " by the law of the land," as used in the Constitution, do not mean a statute passed for the purpose of working the wrong. That construction would render the restriction absolutely nugatory, and turn this part of the Constitution into mere nonsense. The people would be made to say to the two houses: You shall be vested with the legislative power of the State, but no one shall be disfranchised or deprived of any of the rights or privileges of a citizen, *unless you pass a statute for the purpose.* See *Taylor* v. *Porter,* 4 Hill, 140; *Jones* v. *Perry,* 10 Yerger, 50; Erwin's Appeal, 16 Penn. St. 256; *Arrowsmith* v. *Burling,* 4 McLean, 598; *Lane* v. *Darman,* 3 Scam. 238; *Reed* v. *Wright,* 2 Greene (Iowa), 15; *Woodcock* v. *Burnett,* 1 Cow. 740; *Kinney* v. *Beverly,* 2 H. & M. 536; *Commonwealth* v. *Byrne,* 20 Grat. 165; *Brown* v. *State,* 30 Wis. 129, and the last case also in 11 Am. R. 559.

Those terms, "law of the land," do not mean merely an act of the general assembly. If they did, every restriction upon the legislative authority would be at once abrogated.

In reference to the infliction of punishment and divest-

ing the rights of property, it has been repeatedly held in this State, and it is believed in every other of the Union, that there are limitations upon the legislative power, notwithstanding these words, and that the clause itself means that such legislative acts as profess in themselves directly to punish persons, or to deprive the citizen of his property, without trial before the judicial tribunals, and a decision upon the matter of right as *determined* by the laws under which it vested, according to the *course, mode,* and *usages* of the *common law as derived from our forefathers,* are not effectually the law of the land for those purposes.    *Hake* v. *Hersau,* 4 D. W. 15.

"The clause meant that the statute which deprives a citizen of the rights of person and property without a regular trial according to the course and usage of the common law, would not be the law of the land in the sense of the Constitution." *(People* v. *Toynbee,* 2 Parker, Cr. R. 343.)

Lord Coke says that the words, "by the law of the land," mean by the course and process of law by indictment or presentment of good and lawful men, where such deeds be done, in due manner or by original writ of the common law."

"Everything which passes under the form of enactment is not, therefore, to be considered the law of the land. If this were so, acts of attainder, bills of pains and penalties, acts of confiscation, acts reversing judgments, and acts directly transferring one man's estate to another, legislative judgments, decrees and forfeitures, in all possible forms, would be the law of the land. Such a strange construction would render constitutional provisions of the highest importance completely inoperative and void. It would tend directly to establish the union of all powers in the Legislature. There would be no general permanent law for courts to administer, or men to live under. The administration of justice would be an empty form, an

idle ceremony.  Judges would sit to execute legislative judgments and decrees, not to declare the law or administer the justice of the country." (Works of Webster, vol. 5, p. 487.)

Thus it appears that "the law of the land" has ever been held to mean more than mere statutory provisions, such as the sixth subdivision of article 714 of the Code of Criminal Procedure.

But we are not forced to the necessity of searching the reports of the other States to ascertain that a statutory provision to try a party for a crime on an indictment which fails to charge the offense, or authorizing the omission of any material allegation, is not "the law of the land" in the sense in which the term is used in our Constitution.

In *Hewitt* v. *State*, 25 Texas, 725, Roberts, J., says: "We do not think that the Legislature can condemn a particular act as an indictable offense, and then empower the court, in the prosecution of a party for the commission of *that act* thus condemned, to substitute in the indictment and proof of it a different act, which is not the same, and is not itself prohibited by law. No citizen of this State shall be deprived of life, liberty, property, or privilege, outlawed or exiled, or in any other manner disfranchised, except by due course of the law of the land." (Bill of Rights.)

"The spirit of this provision in our Bill of Rights would seem to apply to this case with great force. It is addressed to and controls the judiciary as well as the Legislature. A citizen is deprived of his property by fine, or of his liberty by imprisonment in default of being able to pay the fine, upon a criminal prosecution in which he is charged with a particular act, which is itself not prohibited as penal, and he is found guilty for an omission of duty in reference to that act which is not charged or proved against him.  His conviction can hardly be said to have been by due course of law."

VOL. XII—41

Does not the sixth subdivision of article 714 of the Code of Criminal Procedure provide for the trial and conviction of a party for a crime upon an indictment which not only omits one, but every one, of the facts necessary to constitute the offense? Indeed, this is a much stronger case of conviction without due course of the law of the land than Hewitt's was.

But in Hewitt's case Justice Roberts further says: "For when an act is made the subject of a criminal charge, the constitutional provision requiring an indictment or information is at once brought into active force in favor of those who are accused of and prosecuted for said act, and if an indictment be preferred it must be such an one as the framers of the Constitution contemplated. Such an indictment then becomes one of the steps in the prosecution in the due process of the law."

In *Williams* v. *State*, 15 Ala. 260, the judgment was based on two statutory provisions:

1. "Every person who shall inveigle, steal, carry or entice away such slave, with a view to convert such slave to his own use, or the use of any other person, or to enable such slave to reach some State or county where such slave may enjoy freedom, such person shall, on conviction, be punished by imprisonment in the penitentiary not less than ten years."

2. "Every person who shall fraudulently or feloniously steal the property of another in any other State or country, and shall bring the same within this State, may be convicted and punished in the same manner as if such larceny had been committed in this State, and in every such case such larceny may be charged to have been committed in any county in or through which such stolen property may have been brought."

The indictment charged "that James Williams, late of said county, etc., in the county aforesaid, one slave named Albert, of the value of five hundred dollars, of the

goods and chattels of John P. Taggart, then and there being found, feloniously did steal, take and lead away," etc.

On the trial it was proved that the slave was taken from the possession of the owner in Hardeman county, Tennessee, and was afterwards found in the possession of the prisoner in Fayette county, Alabama, where the indictment was presented.

The prisoner asked a charge that evidence of the taking in Tennessee, and the property being found in his possession in Fayette county, Alabama, would not authorize a conviction on the indictment; which was refused, and he was convicted and sentenced to ten years' confinement in the penitentiary.

A motion in arrest of judgment, on grounds apparent upon the face of the indictment, was made and overruled.

In the opinion of the Supreme Court, reversing the judgment, Collier, C. J., says: "It is abundantly shown by the cases cited that an indictment founded upon that section (the first above), should substantially, and with *particularity,* allege the existence of such a state of facts as constitute the offense. Though proof of them would establish a larceny at common law, it is not sufficient for the indictment to charge that offense in the general terms which are sanctioned by precedent. The statute must be followed, and *quo animo* the act was committed must be specially stated."

So, in prosecutions for embezzlement under our Code, the indictment must allege the existence of such a state of facts as constitute that offense, and though it is subject to the same penalty as theft, it is not sufficient for the indictment to charge the latter in its ordinary terms, according to precedent.

The statute defining embezzlement must be followed, and the acts and intents constituting the offense must be specially stated.

Again, Judge Collier in the same case says: "We have seen that, if the offense had been committed here, the indictment must, in its allegations, have conformed to the statute, and that the prisoner could not have been convicted upon a charge of larceny in general terms."

Then, it is plain he did not assent to the proposition that the latter part of the section, relating to the offense committed by bringing the stolen property into the State, could relieve the prosecution from pursuing the particular statute on which the indictment is based, and stating all the facts and circumstances necessary to bring the accused precisely within such statute. And it is certain that no such departure from established usage can be "due course of the law of the land." Yet the departure in the case in hand is much greater, and cannot for a moment be deemed legal, unless it is admitted that the Legislature can make any and everything "due course of law."

Judge Curtis, of the Supreme Court of the United States, in *Den* v. *Murry et al.* 18 How. 272, says: "Due course of law generally implies and includes *actor, reus, judex*, regular allegations, opportunity to answer, and trial according to some settled course of judicial proceedings."

"No person can be made to suffer for a criminal offense, unless the penalty be inflicted by due process of law." . . . "It ordinarily implies and includes a complaint, a defendant and a judge, *regular allegations*, opportunity to answer and a trial according to some settled course of judicial proceedings." *Hunter* v. *Reily*, 53 Penn. 117.

In Texas, the State's complaint is the indictment or information "accusing the person therein named of some act or omission which, by law, is declared to be an offense." The defendant is the person so accused; the judge is the court having jurisdiction to try the particular offense; the regular allegations are such as set it forth.

in plain and intelligible words, "by a statement of" all such facts and circumstances as constitute the particular statute offense for which he is liable to suffer, "so as to bring the party indicted precisely within the provisions of the statute;" the opportunity to answer is to plead to the particular case made by the averments, and no other; and the trial is of the one issue between the State and the accused, made by such allegations and plea, governed by some settled rules of judicial proceedings, "*according to the course, mode, and usages of the common law.*"

Whenever the penalty of the law prescribed for any criminal is inflicted upon a person in this State, without compliance with any one of these requirements, the punishment is not "by the due course of the law of the land." No other mode of proceeding to conviction and punishment can possibly be by "due process of the law of the land."

In *Twitchell* v. *The Commonwealth,* where the indictment was under the Pennsylvania statute providing that it should be sufficient, in indictments for murder, "to charge that the defendant did feloniously, wilfully, and of malice aforethought, kill and murder the deceased," on application for a writ of error to the Supreme Court of Pennsylvania before the Supreme Court of the United States, on the ground that a conviction of murder upon such indictment was not by due process of law, but was repugnant to the fifth and sixth amendments of the Constitution of the United States, Chief Justice Chase said: "We are by no means prepared to say that if it were an open question whether the fifth and sixth amendments of the Constitution apply to the State governments, it would not be our duty to allow the writ applied for, and hear argument on the question of repugnancy. We think, indeed, it would. But the scope and application of these amendments are no longer subjects of discussion here." (7 Wall. 325.)

From this language it is plain that the Supreme Court did not deem such indictment a step in "due process of the law of the land," and the ruling in *Pennoyer* v. *Neff*, 95 United States, 714, applies this term, as expressed in the fourteenth amendment, as a restriction upon the State governments. So now it is beyond the power of any State in this Union to " deprive any person of life, liberty or property without due process of law."

Though the common sense forms, so called, have in part been sustained in Alabama, it is understood that not one of them which omits any *statement or word required to make out every material ingredient in the description of the offense charged* has been sustained. 45 Ala. 88. " And when the subject matter of the indictment cannot be brought within the meaning of the statute without the aid of extrinsic evidence, it is necessary, besides charging the offense in the words of the statute, to aver such facts and circumstances as may be necessary to bring the matter within the meaning of it, so as to characterize the crime alleged and make it judicially appear, in order that the accused may be informed of the true '*nature* and *cause* of the accusation against him.'" *State* v. *West*, 10 Texas, 555; *Jesse* v. *State*, 28 Miss. 109, and cases in 24 and 42 Miss. *supra; Gray* v. *State*, 7 Texas Ct. App. 18; Id. 189; *White* v. *State*, 3 Texas Ct. App 605.

Any statutory form of indictment in this State which does not contain these requisites is insufficient, and the writer would not be understood to approve any such.

It is believed the authorities and sound reasoning fully warrant the following conclusions:

1. That the constitutional "right to demand the *nature* and *cause* of the accusation against him" guaranties to the accused that the indictment or information shall state every fact and circumstance necessary to a certain, specific and complete description of the particular offense,

so as to characterize it, and make it judicially appear upon the record of the cause.

2. That a person tried for a crime not so set forth and described in the indictment in the case, no matter how fully it may describe any other, is not held to answer for the particular criminal offense by "an indictment of a grand jury," as contemplated by the Bill of Rights.

3. That a conviction for a crime not so made to appear upon the record by the indictment is not "by the due course of the law of the land."

4. That these constitutional provisions are addressed to and control the judiciary as well as the Legislature, and require this court to reverse a judgment based on a violation of either of them, whenever properly brought before it on appeal, in order that the citizen may not "be deprived of life, liberty or property without due process of the law of the land."

5. That the controlling power of these provisions cannot be removed, contracted, nor limited by any legislative enactment, but must remain complete as part of the supreme law of the land, in favor of any person accused of crime, in this State, until the State in convention, by the use of its original sovereign powers, after the United States shall have removed the binding effect of the fourth amendment of the Constitution of the United States from the States, remove the three provisions from its Constitution.

Finally: To allow the indictment for a greater to sustain a conviction for the lesser offense, it must contain the statement of every inculpatory fact and circumstance material to the description of the latter, and the two must be alike as to all the essential constituent elements of the lesser offense, so that the allegation will include it without contradicting the material averments of the greater. Whenever an indisputable constituent fact or circumstance of the lesser is not included in the greater, the lat-

ter cannot be made to include the former, no matter how many other facts and circumstances may be common to both.

In other words, the *veræ causæ* of both must be identical to the whole extent of the lesser offense; therefore the offense charged, and that for which the defendant is convicted, must be the same to the whole extent of the latter, for it is a familiar rule of the law that facts proved when not averred cannot constitute the basis of a judgment. Indeed, we should, in every criminal case, strike from the indictment every fact not proved, and render the verdict and judgment in accordance with those remaining as proved, if in law they constitute an act or omission declared by law to be an offense. Then the allegation, verdict and judgment will agree, the first being the *nature* and *cause*, the second the proof or truth of such act or omission, and the third the conclusion of law arising upon the concurrence of the other two. And when this agreement is found in the record of a cause, then, in that particular, the punishment inflicted may be said to be "by due course of the law of the land."

It does seem certain that the indictment in this case and the verdict and judgment thereon would require much skill in false reasoning to consider them together without concluding in a *reductio ad absurdum*. And as the law reasons logically, rejecting superfluous, contradictory and incongruous things, when its solemn proceedings are made objects of ridicule by its officers or legislative enactment the citizen should be protected by the court.

As the record in this case does not contain any allegation, or show where the defendant ever made any answer to a charge of, embezzlement, was it due process of law to proceed to judgment, convicting him for that crime before it was involved in an issue between the State and the defendant? If so, the constitutional guaranties are indeed but empty forms, idle ceremonies, and one by one

the most sacred rights of freemen might all be removed, and the very ends for which society was organized be thwarted.  If the Legislature can provide for the conviction of a citizen without any charge informing him of the *nature* and *cause* of the prosecution against him in one, it can in every case, and if it can do so indirectly, it can do so directly.  Affirm its right to do this, and each popular excitement may add another instance of innovation until no man will be safe in the enjoyment of life, liberty or property.

We would soon be in a condition to know as little of the *nature* and *cause* of our being restrained in our liberties and confined in a dungeon as did the victims of the inquisition, and to be brought before a court for trial and liable to be convicted for any crime of which malice or popular excitement should, at the moment, offer the slightest *prima facie* evidence, without being allowed to get any evidence, however much might exist, to rebut, contradict, or explain and exculpate.  Such, indeed, is the inevitable conclusion arising from the record in this case, for it is impossible to conceive how the defendant, when brought before the court to answer the allegation of theft, and upon his plea thereto of "not guilty," could be expected to have his testimony ready to show that he had disposed of the property in accordance with the terms of a trust, to prove that, in fact, there never was any trust or duty in the particular matter, or to establish the fact that he never appropriated any such property to his own use.  Yet, had he, by intuition, conceived a possibility of his being met by proof tending to show embezzlement, and been prepared to meet such emergency, still, under the law, if it be a law, he was liable to be surprised by the introduction of proof tending to show that he obtained the goods or property under false pretense, or had received them knowing them to be stolen.

All this, and more, may be expected when such laws

are affirmed to be the "law of the land," for, in a science like the law, which reasons logically, the introduction of one erroneous principle admits every other possibly deducible therefrom; and, if we introduce the rule that the Legislature can make any and everything law, binding upon the courts of the country, it will be impossible to imagine the infinity of wrongs that may follow, and evils that may flow from it.

The judgment is reversed and the prosecution dismissed.

*Reversed and dismissed.*